OPINION
{¶ 1} Appellant, Jennifer Brooks, appeals from the January 30, 2004, judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, which granted permanent custody of appellant's two daughters, Veronica and Heather Brooks, to appellee, Franklin County Children Services ("FCCS") for purposes of adoption. While the court's order also terminated the parental rights of Veronica and Heather's father, Ronn Brooks, he has not appealed the trial court's judgment.
 {¶ 2} The record reveals the following facts. This case began in March 2000, when appellant's elder daughter, Veronica, told her teacher that her father had been beating appellant. During a visit to the Brooks home conducted thereafter, FCCS caseworker, Emily Ledvinka, witnessed Mr. Brooks in a drunken and angry state, and also witnessed that appellant and Veronica were frightened of Mr. Brooks. On March 22, 2000, Veronica and her younger sister, Heather, were removed from their home pursuant to an emergency order of the juvenile court, and were placed in foster care.
 {¶ 3} In April 2000, Veronica told a Children's Hospital intake worker that her father had been sexually abusing her from the time she was four or five years old until she was six or seven years old. She described various ways in which her father would touch her inappropriately, including underneath the covers while she was in bed with both parents. The Children's Hospital intake worker disclosed the allegations of abuse to Ms. Ledvinka, who then disclosed them to appellant. According to appellant, she did not believe the allegations "because there was no proof." Because of the sexual abuse allegations, and because appellant was still living with her husband, FCCS limited appellant's visits with Veronica and Heather to one hour of supervised visitation per week. No visitation was permitted with Ronn Brooks. Sometime after mid-June of the year 2000, Heather, too, disclosed that she had been sexually abused by her father.
 {¶ 4} In May 2000, Veronica was admitted to Upham Hall at the Ohio State University Medical Center for 10 days, after making threats of suicide. After her release, she was placed in a "treatment foster home" due to her self-harm behaviors and dissociative behaviors (such as calling herself by two different names), and began therapy with FCCS counselor Linda Brancato. Heather was later placed in the same foster home.
 {¶ 5} FCCS dismissed the initial complaint, which had been based solely on Ronn Brooks' spousal abuse, and filed two new complaints based on the allegations of sexual abuse. An adjudicatory hearing was held in both cases on September 27, 2000, and the 3rd and 4th of October 2000. In his decision, dated October 11, 2000, the magistrate found Veronica to be abused, dependent and neglected, and found Heather to be neglected and dependent.
 {¶ 6} The magistrate noted that Veronica's allegations of abuse are credible, and that her reports of a history of domestic violence between her parents are corroborated by a great deal of independent evidence. The magistrate found that appellant had left Mr. Brooks several times in the past, due to his continued spousal abuse, but always returned to him. He found that appellant did not see domestic violence as a problem that she and Mr. Brooks had, despite the fact that, during one incident of domestic violence witnessed by Veronica and Heather, a police officer responding to the scene shot Mr. Brooks. In another incident, Mr. Brooks broke appellant's nose so badly that the injury required surgery.
 {¶ 7} The magistrate found that Mr. Brooks has a history of self-harm. He has tried to hang himself, stab himself, and has tried to drink antifreeze. He has threatened self-harm in front of Veronica, and told Veronica, as she was leaving for school one day, that he would kill himself by the time she came home from school that day. Mr. Brooks acknowledged that he is an alcoholic, and has also admitted to using cocaine.
 {¶ 8} Appellant left Mr. Brooks once again, in the summer of 2000, following removal of her daughters from the home, but returned to him two months later when the children were not returned. The magistrate found that appellant left Mr. Brooks "to appease everybody" and that, at that time, she did not "see any real reason to leave Mr. Brooks."
 {¶ 9} On November 20, 2000, the magistrate held a dispositional hearing in both cases. In his decision, dated December 14, 2000, the magistrate found that returning Veronica and Heather to their home would be contrary to the girls' welfare, and that FCCS had made reasonable efforts to prevent or eliminate the need for removal from the home. The magistrate recommended that the court adopt the case plan recommended by FCCS, make the children wards of the court, and award temporary custody to FCCS. By judgment entry journalized on the same day, the court adopted the magistrate's decision and made all recommendations therein orders of the court.
 {¶ 10} The case plan required appellant to complete parenting classes and to demonstrate that she can put what she learned into practice, specifically with respect to how to better protect her children. She was required to complete a psychological assessment and individual counseling, and to follow all of her therapist's recommendations. Specifically, she was required to exercise complete, honest and total disclosure with the therapist. She was to successfully complete domestic violence counseling and cooperate fully and honestly therewith, making full disclosure as required. She was required to recognize her responsibility in the domestic violence cycle. She was required to follow all recommendations of counselors and have no further incidents of domestic violence with Mr. Brooks.
 {¶ 11} Appellant was required to learn to believe, support and protect the children, and to abide by the children's wishes, with respect to, for example, not speaking about Ronn Brooks and not calling Veronica "Ronnie." She was to refrain from making any statements to the girls, during visits and on the telephone that would emotionally traumatize them. She was further required to not place the girls into situations where they were forced to take on the role of the parent in their interactions with her. Appellant was also required to contact the girls' counselors and therapists, and follow all of their recommendations.
 {¶ 12} Mr. Brooks was required to refrain from drinking alcohol and using drugs, and to seek out new ways of dealing with stress. He was required to cease inflicting harm upon himself and others, and to cease threatening to do so. He was required to attend and cooperate fully with drug and alcohol counseling, and to drop random urine screens at least once per week. Mr. Brooks was also required to admit to his history of domestic violence, and to understand how the same has adversely affected his daughters and has compromised the safety of everyone in the home. He was required to demonstrate that he was able to control his aggression. He was further required to eliminate all sexual abuse behavior and complete a sex offender assessment and follow-up treatment. Mr. Brooks never completed any of the required counseling, and failed otherwise to complete the aspects of the case plan pertaining to him.
 {¶ 13} Appellant attended individual counseling until the counselor terminated the sessions in December 2001 because she deemed them successfully completed. However, according to Ms. Ledvinka, appellant had continuously maintained, to Ms. Ledvinka and to appellant's counselor, that she had separated from Ronn Brooks shortly after the girls were removed from the home. But during a telephone conversation that took place in March 2001, Mr. Brooks told Ms. Ledvinka that the two had been living together since October 2000, and had lied about being separated.
 {¶ 14} When Ms. Ledvinka later telephoned appellant to confront her about these lies, appellant stated that she did not know why she had lied. She told Ms. Ledvinka that she had broken up with Mr. Brooks a few days earlier because he had been beating her, locking her in the closet, not allowing her to leave the house to go to work, and throwing her clothing in a nearby pond. She stated she was sick and tired of living this kind of existence. However, Mr. Brooks had already told Ms. Ledvinka that the two had argued because Mr. Brooks wanted to "come clean" about the fact that that they were still living together, and was planning on disclosing this fact to Ms. Ledvinka, which appellant did not want him to do.
 {¶ 15} Appellant told Ms. Ledvinka that she had had a session with her counselor the evening before but had not mentioned to the counselor anything about living with Mr. Brooks, his continued domestic abuse and the most recent break-up with him. Ms. Ledvinka questioned why appellant did not share this information with the counselor; Ms. Ledvinka subsequently informed the counselor herself about the fact that appellant had been living with Mr. Brooks for the previous five months.
 {¶ 16} After it was discovered that appellant had been living with Mr. Brooks, she did, finally, separate from him. On March 29, 2001, appellant obtained a civil protection order ("CPO") against Mr. Brooks, and later instituted divorce proceedings against him. After Mr. Brooks violated the CPO, appellant cooperated in his criminal prosecution, which resulted in his imprisonment following a conviction for robbery, menacing by stalking and violation of the CPO.
 {¶ 17} Despite the fact that Ms. Ledvinka gave appellant the names and contact information of Veronica's and Heather's counselors, appellant failed to follow up in order to meet with these counselors and gain insight into her daughters' problems and therapy goals and recommendations. Veronica was enrolled in group counseling for victims of sexual abuse, and in response to an invitation to do so, appellant attended several sessions of a separate parents' group that met simultaneously with the victims' group. Though she attended these sessions, appellant chose not to participate in them. Appellant's persistent disbelief of Veronica's sexual abuse allegations led the sexual abuse victims group counselor to decide not to invite appellant to attend any of the victims' group sessions. During her attendance at one parents' group session, appellant made an appointment to meet separately with the victims' group facilitator to discuss appellant's cooperation with the group in order to help Veronica. Appellant failed to attend the scheduled meeting, and never called to cancel and/or to reschedule.
 {¶ 18} Appellant also completed domestic violence classes. She needed to complete the domestic violence classes twice because she was once again involved with Mr. Brooks during some of the sessions. Appellant almost never missed any of her weekly, supervised visitation sessions with Veronica and Heather. However, she failed to abide by the girls' wishes that she refrain from speaking about their father. For example, she brought Christmas gifts for the girls sent by their father. During telephone conversations, she would bring up Mr. Brooks, and, prior to appellant's final separation from him, the girls would be able to hear their father in the background.
 {¶ 19} Meanwhile, on May 23, 2001, FCCS filed motions for permanent custody of Veronica and Heather, pursuant to R.C.2151.414(B)(1)(d). The case was tried over 11 days spanning a three-month period, beginning in April 2002. On July 12, 2002, the magistrate filed a decision recommending that it was in the best interests of the children that appellant's parental rights be terminated, and that permanent custody be awarded to FCCS. On July 24, 2002, appellant's trial counsel filed objections to the magistrate's decision, which objections came before the court for a hearing on January 22, 2003. The basis for the objections was that the magistrate's decision was against the manifest weight of the evidence. On March 7, 2003, the trial court filed its decision and entry overruling appellant's objections and awarding permanent custody of Veronica and Heather to FCCS.
 {¶ 20} Appellant appealed to this court, asserting four assignments of error corresponding to the first, second, sixth and seventh assignments of error asserted in the present appeal. A panel of this court unanimously determined that, in reaching its conclusion that an award of permanent custody in favor of FCCS was warranted, the trial court had not sufficiently stated findings making it clear that it had considered the best interest factors contained in R.C. 2151.414(D). Accordingly, the case was remanded to the trial court to, "analyze the best interest factors and any additional relevant factors, and [to] state findings to indicate that such an analysis was conducted." In reBrooks, 10th Dist. No. 03AP-282, 2003-Ohio-5348, at ¶ 23 ("Brooks I"). Appellant's other assignments of error were held moot and not addressed.
 {¶ 21} Upon remand, appellant was appointed new counsel, who filed a motion for visitation, a request for supplemental briefing and an evidentiary hearing, and a motion to re-brief the best interest factors, which motions were overruled by entry journalized January 21, 2004. On January 30, 2004, the trial court journalized a new decision and entry adopting the magistrate's decision and awarding permanent custody of Veronica and Heather to FCCS. This appeal followed.
 {¶ 22} Appellant asserts eight assignments of error for our review, as follows:
FIRST ASSIGNMENT OF ERROR
The trial court erred by terminating the appellant's parental rights, when the appellant did not receive the effective assistance of counsel guaranteed by the Ohio and United States Constitutions.
SECOND ASSIGNMENT OF ERROR
The trial court erred by terminating the appellant's parental rights when it failed to find the presence of one of the R.C.2151.414(E) factors.
THIRD ASSIGNMENT OF ERROR
R.C. 2151.414 insofar as it permits a juvenile court to terminate parental rights based solely upon the passage of time, is facially unconstitutional.
FOURTH ASSIGNMENT OF ERROR
R.C. 2151.414 was unconstitutionally applied in this case.
FIFTH ASSIGNMENT OF ERROR
The trial court erred to the prejudice of the appellant by failing to hold an evidentiary hearing following this Court's prior remand and to comply with the law of the case.
SIXTH ASSIGNMENT OF ERROR
The trial court erred by terminating the appellant's parental rights, when the evidence clearly and convincingly established that the appellant had substantially complied with the case plan.
SEVENTH ASSIGNMENT OF ERROR
The trial court erred by terminating the appellant's parental rights, as that judgment was against the manifest weight of the evidence and was unsupported by clear and convincing evidence.
EIGHTH ASSIGNMENT OF ERROR
The trial court erred to the prejudice of the appellant by failing to appoint separate counsel for Veronica and Heather Brooks.
 {¶ 23} In support of her first assignment of error, appellant argues that she did not receive a fair trial because she received ineffective assistance of counsel during the proceedings below.
 {¶ 24} Pursuant to R.C. 2151.352, parents are guaranteed the right to counsel at all stages of a permanent custody proceeding. This right also arises from the guarantees of due process and equal protection contained within the constitutions of Ohio and the United States. State ex rel. Heller v. Miller (1980),61 Ohio St.2d 6, 399 N.E.2d 66, paragraph two of the syllabus. The right to counsel includes the right to effective assistance of counsel. In re Heston (1998), 129 Ohio App.3d 825, 827,719 N.E.2d 93. The test for ineffective assistance of counsel used in criminal cases is equally applicable to actions seeking to force the permanent, involuntary termination of parental custody. Inre McLemore (Mar. 20, 2001), 10th Dist. No. 00AP-974.
 {¶ 25} A properly licensed attorney in Ohio is presumed competent. Vaughn v. Maxwell (1965), 2 Ohio St.2d 299, 301,209 N.E.2d 164. Thus, the burden of showing ineffective assistance of counsel is on the party asserting it. State v.Smith (1985), 17 Ohio St.3d 98, 100, 477 N.E.2d 1128. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance.State v. Sallie (1998), 81 Ohio St.3d 673, 675, 693 N.E.2d 267. Tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance of counsel. State v. Carter (1995), 72 Ohio St.3d 545, 558,651 N.E.2d 965 ("judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel");State v. Carpenter (1996), 116 Ohio App.3d 615, 626,688 N.E.2d 1090 (a court of appeals is to "presume that a broad range of choices, perhaps even disastrous ones, are made on the basis of tactical decisions and do not constitute ineffective assistance").
 {¶ 26} "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."Strickland v. Washington (1984), 466 U.S. 668, 686,104 S.Ct. 2052, 80 L.Ed.2d 674. To succeed on her claim of ineffective assistance of counsel, appellant must satisfy a two-prong test. First, she must demonstrate that her trial counsel's performance was deficient. Id. at 687. This requires a showing that counsel committed errors "so serious that counsel was not functioning as the `counsel' guaranteed by the Sixth Amendment to the United States Constitution." Ibid. But an error by counsel, even if unreasonable under prevailing professional standards, does not warrant setting aside a judgment unless the error affected the outcome of the trial. Id. at 691. Thus, once appellant has shown deficient performance, if she can make such a showing, she must also demonstrate that there exists a reasonable probability that, were it not for her counsel's errors, the result of the trial would have been different.[1] Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Ibid.
 {¶ 27} Though claims of ineffective assistance of counsel are comprised of two components, "there is no reason for a court * * * to approach the inquiry in the same order or even to address both components of the inquiry if the [party asserting the claim] makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Id. at 697.
 {¶ 28} In evaluating appellant's claim of ineffective assistance of counsel, we must consider the totality of the evidence before the trial court because:
[s]ome of the factual findings will have been unaffected by [any] errors, and factual findings that were affected will have been affected in different ways. * * * Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.
Id. at 695-696.
 {¶ 29} Appellant argues that her trial counsel was ineffective in the following six ways: (1) failing to file detailed objections to the magistrate's decision; (2) failing to assert that R.C. 2151.414(B)(1)(d) is unconstitutional both facially and as applied in this case; (3) failing to object to the guardian ad litem's failure to file a final written report; (4) failing to cross-examine the guardian ad litem; (5) failing to object to the presence of the caseworker-witness throughout the proceedings; and (6) failing to object to hearsay and to expert opinion testimony offered by lay witnesses.
 {¶ 30} Appellant argues that she was prejudiced by her trial counsel's filing of a one-page document containing objections to the magistrate's decision, and subsequent failure to file any supplemental objections. We perceive no prejudice to appellant by counsel's failure to submit more detailed objections. As appellant points out in her brief, the trial court warned counsel to file more specific objections in the future because the court "could overrule * * * outright" the general objections appellant's counsel had filed. However, the court did not overrule them "outright"; rather, it proceeded to fully address the weight and sufficiency of the evidence as these were directly related to the applicable best interest factors.[2] Thus, appellant did not suffer any prejudice as a result of the brevity of the objections her counsel filed.
 {¶ 31} Next, appellant argues her counsel was ineffective in failing to assert to the trial court that R.C. 2151.414(B)(1)(d) is unconstitutional both facially and as applied in this case. This court has previously determined that Ohio's statutes and rules governing permanent custody proceedings are not unconstitutional. See In re Thompson (Apr. 26, 2001), 10th
Dist. No. 00AP-1358; In re Thompson, 10th Dist. No. 02AP-557, 2003-Ohio-580, at ¶ 23, discretionary appealed not allowed, 98 Ohio St.3d 1515, 2003-Ohio-1572, 786 N.E.2d 64, certiorari denied, Jaraki v. Franklin County Children Servs.
(2003), 124 S.Ct. 185; 157 L.Ed.2d 121.
 {¶ 32} Appellant claims specifically that her counsel should have argued that 2151.414(B)(1)(d) unconstitutionally creates an irrebuttable presumption of parental unfitness when the children subject of the motion have been in the custody of the children service agency for the requisite time period. However, at least two appellate districts have specifically rejected this argument. See In re Gomer, 3rd Dist. No. 16-03-19, 2004-Ohio-1723, discretionary appeal not allowed, 809 N.E.2d 1159,2004-Ohio-2830, in which the Third Appellate District stated:
We do not believe that R.C. 2151.414(B)(1)(d) deprives a parent of fundamentally fair procedures. Prior to instituting a permanent custody proceeding under R.C. 2151.414(B)(1)(d), the parent has twelve months to demonstrate that the parent is able, suitable, or fit to care for the child. Thus, the parent is not deprived of the ability to be reunified with the child or to demonstrate the parent's ability, suitability, or fitness to care for the child.
Id. at ¶ 31, quoting In re Workman, 4th Dist. No. 02CA574, 2003-Ohio-2220, at ¶ 40. Neither this court nor the Supreme Court of Ohio has held otherwise, and we have not indicated we would be inclined to do so. Accordingly, there is not a reasonable probability that the result of the within proceeding would have been different had appellant's trial counsel challenged the facial constitutionality of R.C. 2151.414(B)(1)(d). Thus, counsel's failure to do so does not constitute ineffective assistance.
 {¶ 33} Appellant argues her trial counsel should have argued that R.C. 2151.414(B)(1)(d) was unconstitutional as applied in this case because (1) the dependency/abuse/neglect proceedings were not fully litigated and finally resolved until roughly eight months after the children were initially removed from their home, while the motion for permanent custody was filed at the earliest possible date, and (2) FCCS made mistakes during the initial phase of the case that hampered appellant's ability to repair her relationship with her children and to fully comply with the case plan. Essentially, it appears, appellant argues that FCCS and the legal system in general rendered it impossible for her to demonstrate her ability, suitability and fitness to care for her children within the time period from initial removal through trial on the permanent custody motion.
 {¶ 34} We note that roughly 18 months elapsed between the time that appellant's case plan was first adopted (November 2000) and the date of commencement of trial on the permanent custody motion (April 2002). We do not believe that this was an inadequate length of time within which appellant was allowed to demonstrate her parental fitness with respect to Veronica and Heather. Though appellant appears to point to errors allegedly made by FCCS in its assistance with implementation of the case plan, we note that, pursuant to the plain language of R.C.2151.414(B)(1)(d), FCCS was not required to demonstrate that it had fulfilled its duty to make reasonable efforts toward reunification, pursuant to R.C. 5153.16(A)(18).
 {¶ 35} Though appellant couches her argument in terms of FCCS and the courts not allowing her to prove her fitness as a parent, the burden of proof was always on FCCS. It was required to prove the merits of its motion by offering evidence regarding the best interest factors in R.C. 2151.414(D), which includes evidence as to appellant's parenting of and relationship with her daughters. Appellant appears to argue that the trial court was forced to take into account only a snapshot of her parenting attributes as they related to the situation giving rise to her daughters' initial removal from the home, and that this snapshot was unfairly negative as a result of FCCS' mistakes, not her own.
 {¶ 36} However, as we noted previously, 18 months passed from the time of the adoption of the case plan until the time the permanent custody motion came on for trial. We do not find this to be insufficient time for appellant to demonstrate her suitability as a parent. We also do not believe that FCCS controlled appellant and her actions such that it effectively foreclosed her ability to do so. We therefore find that any argument regarding the as-applied constitutionality of R.C.2151.414(B)(1)(d) would not have affected the outcome of the trial. Accordingly, we conclude that appellant's trial counsel was not ineffective for failing to raise the argument below.
 {¶ 37} Next, appellant argues that she was prejudiced by her counsel's failure to object to the fact that the guardian ad litem did not file a final written report "prior to or at the time of the hearing." R.C. 2151.414(C).[3] But subsection (C) and Juv.R. 40(E)(3)(b) do not require that the guardian's report be filed and time-stamped by the clerk of court prior to the hearing; they only require that the report be submitted to the court prior to or at the time of the hearing. In re Kramer,
10th Dist. No. 02AP-1038, 2003-Ohio-2277, at ¶ 66.
 {¶ 38} The record herein reveals that the guardian's report was first time-stamped on October 11, 2001, and was again time-stamped one minute after the magistrate's decision was time-stamped. From this it can be inferred that the magistrate had possession of the report from the time of trial, and again caused the same to be time-stamped once his decision was ready to be time-stamped as well. It certainly does not support appellant's position that the guardian's report was notsubmitted at the time of trial. Our review of the record reveals that the July 12, 2002 magistrate's decision specifically notes that the guardian ad litem submitted a written report. Accordingly, trial counsel's failure to make an objection regarding the submission of the guardian ad litem's report does not constitute ineffective assistance.
 {¶ 39} Next, appellant argues she was prejudiced by her counsel's failure to cross-examine the guardian ad litem. She argues that this failure resulted in prejudice because such a cross-examination would have revealed "the guardian's basis for supporting the agency's permanent custody motion."[4]
 {¶ 40} An appellate court reviewing an ineffective assistance of counsel claim must not scrutinize trial counsel's strategic decision to engage, or not engage, in a particular line of questioning on cross-examination. State v. Revels, 12th
Dist. No. CA2001-09-223, 2002-Ohio-4231, at ¶ 28. This is especially true when, as here, the record reveals no basis for us to conclude that cross-examination of the guardian ad litem would have revealed any facts that would have changed the outcome of the trial, or would even have been favorable to appellant. SeeState v. Melhado, 10th Dist. No. 02AP-458, 2003-Ohio-4763, appeal not accepted for review, 100 Ohio St.3d 1547,2003-Ohio-6879, 800 N.E.2d 752. See, also, State v. Brown
(1988), 38 Ohio St.3d 305, 528 N.E.2d 523; State v. Covington,
10th Dist. No. 02AP-245, 2002-Ohio-7037.
 {¶ 41} In fact, the decision not to cross-examine the guardian ad litem may well demonstrate counsel's competence and skill, in light of the fact that the guardian expressed strong and unequivocal support for FCCS' motion. If appellant's counsel was aware of no facts that would undermine the basis for such support, cross-examination as to the same might well have served only to underscore the merits of FCCS' motion. Given that there is at least one plausible scenario under which counsel's decision not to cross-examine the guardian ad litem was part of an astute legal strategy, we find no ineffective assistance with respect thereto.
 {¶ 42} Appellant next argues that her trial counsel was ineffective for failing to object to the presence in the courtroom of Ms. Ledvinka, the caseworker-witness designated to represent FCCS at trial. However, appellant does not argue, and cannot demonstrate, that she suffered any actual prejudice as a result of Ms. Ledvinka having been present for the testimony of other witnesses. There has been no suggestion that Ms. Ledvinka interfered with the proceedings or that her presence had any effect on the testimony of other witnesses. Accordingly, counsel's failure to request a separation of witnesses does not constitute ineffective assistance. See In re Thompson, 10th
Dist. No. 02AP-557, 2003-Ohio-580, at ¶ 37.
 {¶ 43} Next, appellant argues she was prejudiced by her counsel's failure to object to certain opinion testimony offered by lay witnesses and to testimony regarding statements made by Veronica and Heather.
 {¶ 44} Appellant argues she was prejudiced by the admission of opinions offered at trial by Ms. Ledvinka and FCCS counselor Linda Brancato regarding the relationship between appellant and her daughters, and what type of placement Ms. Ledvinka and Ms. Brancato believed was best for the girls. This testimony is admissible if it satisfies both requirements of Evid.R. 701. Inre Jenkins (June 28, 2001), 10th Dist. No. 00AP-1411; Skeenv. Gullett (June 23, 1994), 10th Dist. No. 93APF12-1633. Evid.R. 701 provides that:
[i]f a witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue.
 {¶ 45} In the present case, Ms. Ledvinka has been employed as a caseworker with FCCS since January 1999 and has worked with the Brooks family since early in the year 2000. She visited the children in their foster home 20 to 25 times in the two years immediately preceding trial. Ms. Brancato is a social worker employed with FCCS as a treatment family clinician in the foster care department. Her job responsibilities include training and supervision of foster parents who take children with emotional and behavioral handicaps, as well as provision of mental health counseling for children placed with those foster parents. Her duties also include facilitating the provision of other resources, which results in her taking on a case management role. She has been so employed with FCCS since 1989. Ms. Brancato has worked with Veronica Brooks since her admission to Upham Hall for psychiatric treatment in May 2000.
 {¶ 46} In light of the foregoing, we conclude that Ms. Ledvinka's and Ms. Brancato's opinions were rationally based upon their perceptions and experience with the individuals involved in this case, and that their opinions were directly relevant to the issues before the court. Accordingly, we perceive no error on the part of appellant's trial counsel in failing to object to these witnesses' opinion testimony.
 {¶ 47} Appellant also contends she was prejudiced by her trial counsel's failure to object to hearsay testimony of Ms. Ledvinka, Ms. Brancato and Dr. Rhonda Lilley. Specifically, appellant argues counsel should have objected to Ms. Ledvinka's testimony that Heather and Veronica did not wish to return to their mother and that Heather did not believe appellant could ever keep her safe; that a man that appellant had recently been dating had a criminal record; and that the foster parents had expressed their desire to adopt both girls. Appellant also argues her counsel should have objected to testimony from Ms. Brancato and Dr. Lilley regarding the girls' wishes for placement.
 {¶ 48} Statements by any of these witnesses regarding the children's fears and wishes are admissible as statements of then-existing state of mind, pursuant to Evid.R. 803(3). In reJenkins, supra, 2001 Ohio App. LEXIS 2870, at *26-27. Specifically with respect to Ms. Ledvinka's testimony about the children's feelings toward their mother, it is true that a trial court may not consider the testimony of a caseworker for purposes of R.C. 2151.414(D)(2), the best-interest factor respecting the children's wishes for placement. In re Swisher, 10th Dist. No. 02AP-1408, 2003-Ohio-5446. However, a court may consider a caseworker's testimony for purposes of R.C. 2151.414(D)(1), the best-interest factor that deals with the interaction and interrelationship of the child with the child's parents and other significant figures in the child's life. In re Smith (Jan. 2, 2002), 9th Dist. No. 20711, 2002-Ohio-34, 2002 Ohio App. LEXIS 2, at * 16. Counsel was not ineffective for failing to object to Ms. Ledvinka's, Ms. Brancato's or Dr. Lilley's testimony as to the children's feelings about being and living with their mother.
 {¶ 49} Furthermore, appellant cannot demonstrate that she suffered prejudice as a result of the admission of testimony regarding the criminal history, if any, of the man she was supposedly dating during the time immediately preceding trial, as there is absolutely no mention of this anywhere in the magistrate's decision. It appears that this testimony was wholly disregarded by the magistrate, who based his recommendation on facts relating to appellant's choices, not those of her boyfriend. Finally, appellant has failed to demonstrate that the result of the trial would have been different had her trial counsel objected to testimony regarding the foster parents' willingness to adopt Veronica and Heather.
 {¶ 50} In consideration of all of the foregoing, we find no merit to appellant's claims of ineffective assistance of counsel. Accordingly, appellant's first assignment of error is overruled.
 {¶ 51} In her second assignment of error, appellant argues the trial court erred in terminating her parental rights without making specific reference to any of the factors enumerated in R.C. 2151.414(E). Without citation to authority for the proposition, appellant argues that even when the motion for permanent custody is based upon R.C. 2151.414(B)(1)(d), which requires no finding as to whether or not the subject children cannot be placed with either parent within a reasonable time, or should not be placed with either parent, the trial court must still make such a determination under R.C. 2151.414(E) before granting the motion, and in doing so, must find the presence of at least one factor among those enumerated at R.C. 2151.414(E)(1) through (16).
 {¶ 52} On the contrary, the plain language of R.C. 2151.414
clearly allows for the termination of parental rights without any finding that the children cannot be placed with either parent within a reasonable time, or should not be placed with either parent. Appellant's parental rights could be lawfully terminated upon a finding that her children have been in the temporary custody of FCCS for 12 or more months of a consecutive 22-month period, and that it is in the best interest of the children to grant permanent custody to FCCS. R.C. 2151.414(B)(1)(d).
 {¶ 53} Because Veronica and Heather Brooks had been in the temporary custody of FCCS for 12 or more months of a consecutive 22-month period,[5] and because the trial court found it to be in the girls' best interest that permanent custody be granted, the trial court was not required to make any findings regarding the possibility of placement with either parent, under R.C.2151.414(E). See In re Williams, 10th Dist. No. 02AP-924, 2002-Ohio-7205, at ¶ 46, appeal not accepted for review,98 Ohio St.3d 1480, 2003-Ohio-974, 784 N.E.2d 712; In re Strong,
10th Dist. No. 01AP-1418, 2002-Ohio-2247, at ¶ 44; In reRodgers (2000), 138 Ohio App.3d 510, 741 N.E.2d 901; In reDyal (Aug. 9, 2001), 4th Dist. No. 01CA12. Accordingly, appellant's second assignment of error is not well-taken and the same is overruled.
 {¶ 54} In her third and fourth assignments of error, appellant argues that R.C. 2151.414 is facially unconstitutional and was unconstitutionally applied in this case. For the reasons elucidated in our discussion of appellant's first assignment of error, we find no merit to appellant's constitutional arguments. Accordingly, appellant's third and fourth assignments of error are overruled.
 {¶ 55} In her fifth assignment of error, appellant argues that this court in Brooks I mandated that the trial court hold a new evidentiary hearing upon remand, and that the trial court erred in failing to do so. In the opinion in Brooks I, which was incorporated by reference into the court's journal entry dated October 7, 2003, this court summarized its mandate on remand as follows:
On remand, the trial court must analyze the best interest factors and any additional relevant factors, and must state findings to indicate that such an analysis was conducted.
In re Brooks, 10th Dist. No. 03AP-282, 2003-Ohio-5348, at ¶ 23. The panel went on to state that the case was being remanded, "for proceedings consistent with this opinion." In the opinion and journal entry in Brooks I, this court did not expressly require that the trial court conduct a new trial. Furthermore, we do not perceive that the decision by the trial court not to take new evidence is inconsistent with the opinion in Brooks I.
 {¶ 56} In Brooks I we focused on the inadequacy of the trial court's explanation of its analysis; we did not quarrel with — indeed, we declined to address — the other alleged problems with the proceedings below. Therefore, without any explicit direction from this court regarding a new trial, we find no error in the trial court having determined that, upon remand, a new trial was not warranted. Accordingly, appellant's fifth assignment of error is overruled.
 {¶ 57} In her sixth assignment of error, appellant argues that the trial court erred in granting appellee permanent custody because the evidence demonstrated that appellant had substantially complied with the case plan. In her seventh assignment of error, appellant argues that the trial court's termination of her parental rights was against the manifest weight of the evidence and was not supported by sufficient clear and convincing evidence. We will address these assignments of error together because they both relate to the sufficiency and weight of the evidence supporting the trial court's judgment.
 {¶ 58} FCCS sought permanent custody pursuant to R.C.2151.414(B)(1)(d). Pursuant to that statutory provision, a court may grant permanent custody of a child to a public children services agency if that child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999, and if the court finds that it is in the best interest of the child to grant permanent custody. Appellant contends that there was insufficient evidence to support the latter finding, and that the manifest weight of the evidence fails to support such a finding. We disagree.
 {¶ 59} In considering the trial court's decision to grant permanent custody to FCCS, this court must determine from the record whether the trial court had sufficient evidence before it to satisfy the clear and convincing standard. Clear and convincing evidence requires that the proof "`produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" In re Estep (Feb. 8, 2001), 10th Dist. No. 00AP-623, 2001 Ohio App. LEXIS 435, at *4, quoting In the Matter of Coffman (Sept 7, 2000), 10th Dist. No. 99AP-1376, citing Cross v. Ledford (1954), 161 Ohio St. 469,120 N.E.2d 118, at paragraph three of the syllabus. However, "every reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]."Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19,526 N.E.2d 1350. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the [juvenile] court's verdict and judgment." Ibid.
 {¶ 60} The findings of a trial court are presumed correct since, as the trier of fact, it is in the best position to weigh the evidence and evaluate the testimony. In re Brown (1994),98 Ohio App.3d 337, 342, 648 N.E.2d 576; In re Hogle (June 27, 2000), 10th Dist. No. 99AP-944. "The discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In re Hogle, supra, 2000 Ohio App. LEXIS 2813, at *12, quoting In re Awkal (1994),95 Ohio App.3d 309, 316, 642 N.E.2d 424.
 {¶ 61} Appellant's sixth and seventh assignments of error are directed exclusively toward the trial court's best interest determination. In determining the best interest of the child, for purposes of a permanent custody motion, the court:
* * * shall consider all relevant factors, including, but not limited to, the following:
(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
R.C. 2151.414(D).
 {¶ 62} Appellant devotes a great deal of her argument under her sixth and seventh assignments of error to pointing out that she substantially complied with the case plan. She argues that her substantial compliance therewith renders the trial court's judgment unsupported by clear and convincing evidence. However, R.C. 2151.414(D) does not require courts to deny a children services agency's motion for permanent custody solely by virtue of a parent's substantial compliance with the case plan.[6]
 {¶ 63} Certainly, if the court deems such compliance relevant, then, pursuant to the plain language of R.C.2151.414(D), the court must consider this factor in passing upon whether it is in the child's best interest to grant or to deny permanent custody to the agency. However, this is but one of many factors the court may find relevant and thus must consider, together with other such factors, in rendering its judgment. Likewise, an appellate court must then apply the foregoing standards of review to this factor in the same manner in which it applies them to other factors found relevant by the trial court. We do recognize, though, that, "the nature of the relationship between a parent and child may certainly be affected by the concerns presented by the case plan and the parent's success in addressing those concerns." In re V.Y., 9th Dist. No. 03CA008404, 2004-Ohio-1606, at ¶ 31. Thus, the degree to which appellant's completion of certain case plan requirements remedied — or failed to remedy — the problems present in her relationship with her daughters, is relevant to the first factor enumerated in R.C. 2151.414(D); that is, the interaction and interrelationship of the children with appellant.
 {¶ 64} However, upon our thorough and considered review of all of the evidence presented at trial in this case (including evidence of appellant's compliance with certain aspects of the case plan), we determine that the evidence supports the trial court's conclusion that a permanent commitment is in the best interests of Veronica and Heather.
 {¶ 65} There was abundant evidence relevant to the interaction and interrelationship of the children with their parents, siblings, relatives, foster parents and other significant persons. See R.C. 2151.414(D) ((1). With respect to this factor, the trial court found that neither Veronica nor Heather has a healthy relationship with either parent; they are fearful of their father and distrustful of their mother's ability to protect them. The court found that the girls' significant emotional and behavioral problems deteriorate whenever they have contact with their mother. The court found that Veronica and appellant have an inverted relationship, wherein Veronica often takes on the role of the parent. The court found that the girls are closely bonded with one another and with their foster parents. The court found that the girls' already unhealthy relationships with their mother have been further damaged by appellant's refusal to believe their allegations of abuse, to support them during therapy and to comply with their wishes.
 {¶ 66} The evidence adduced at trial supports the trial court's findings. Dr. Lilley testified that Heather had a bond with her mother that "wasn't very strong" and that, "[t]he identification she had was with the foster parents. She had the strongest relationship with the foster parents."[7] Dr. Lilley testified that Heather had little desire for contact with the biological family.
 {¶ 67} Dr. Lilley diagnosed Heather with Adjustment Disorder with anxious mood and Post-Traumatic Stress Disorder ("PTSD"). She opined that the source of Heather's emotional and psychological problems was her interactions with her parents. Dr. Lilley stated that Heather does not trust her mother and, even though her mother is not the parent who perpetrated the emotional and sexual abuse she suffered, she perceives appellant as being embodied by the abuse.
 {¶ 68} Dr. Lilley diagnosed Veronica with Major Depressive Disorder with psychotic features. "Psychotic features" was added to the diagnosis because, prior to her hospitalization, Veronica had been experiencing hallucinations and delusions, and exhibited dissociative behaviors. Dr. Lilley also diagnosed Veronica with PTSD, and noted that Veronica's PTSD is a great deal more severe than Heather's because she has had more contact with her parents and paternal grandparents. Dr. Lilley opined that Veronica's dissociative behaviors and psychotic process are not long-term permanent conditions; rather, they are reactions to the stress occasioned specifically by the trauma she experienced while living with her parents.
 {¶ 69} Dr. Lilley reported that, at the time of her initial evaluation of Veronica, she was extremely traumatized by her telephone contacts with appellant, during which she was being called Ronnie, contrary to her wishes. However, Veronica takes on the responsibility for her mother's and her sister's happiness, and blames herself if either of them is unhappy or hurt. She tries, "to make everybody else in her world happy and not have pain at the expense of herself * * *."[8]
 {¶ 70} Dr. Lilley's psychological evaluation of Veronica revealed that Veronica has exhibited a history of oppositional and defiant behaviors, suicidal ideations and acting out in inappropriate sexual ways. Dr. Lilley reported, however, that since removal from her home and after regular therapy during that time period, she has made significant positive gains. Specifically, she is able to better control her emotions, she no longer exposes herself to male students at school and does not try to entice other children into sexual behaviors, she is more emotionally labile and less oppositional, and she no longer exhibits suicidal ideations. However, Dr. Lilley noted, Veronica regresses into increased acting out behaviors after visitation with her mother and whenever she is confronted with the prospect of returning home or the topic of the instant litigation.
 {¶ 71} Ms. Brancato testified that she never facilitated any involvement by appellant with Veronica's individual counseling sessions because appellant continued to exhibit a lack of belief in Veronica's statements regarding Mr. Brooks' sexual abuse of Veronica, and a concomitant lack of support for Veronica in her attempts to meet her treatment goals. This was so, according to Ms. Brancato, even after Veronica read to appellant a statement entitled, "My Story," that she had prepared with Ms. Brancato's assistance, in which she explained what Mr. Brooks had done to her.
 {¶ 72} Dr. Lilley summed up Veronica's relationship with her mother as follows
The abandonment that she perceived from her mother, her mother's failure to protect her, her mother's failure to acknowledge the abuse that she had experienced, her mother's failure to comply with any of her requests to not talk about the father, to not use the name Ronnie instead of Veronica even after pleading with the mother, because Veronica would expressed (sic) that that caused her pain, that brought up memories of the past that were very frightening to her. So she felt not — she felt not only emotionally — she felt abandoned by the mother as well as not being protected by her mother.[9]
 {¶ 73} Dr. Lilley opined that, despite the trauma they had experienced at home, after Veronica and Heather were removed to foster care, appellant had a "window of opportunity" to repair her relationships with her daughters such that if she had made sufficient effort to do so, she could have reunited with them. However, she testified that, "that window of opportunity was lost, not based on the actions of the caseworker or any of the other agency people involved, but it was lack of effort on the part of the mother that made us lose that window of opportunity."[10]
 {¶ 74} Ms. Brancato testified that it was not until roughly one month prior to the commencement of trial on the permanent custody motion that Veronica, for the first time, told her that appellant had indicated that she believed Veronica had been sexually abused by her father. Dr. Lilley stated that acknowledgment by appellant of the sexual abuse was a precondition to appellant being allowed to be involved with Veronica's group counseling. Because it took so long for appellant to communicate to Veronica her belief in Veronica's allegations, appellant's participation in group therapy could not have even begun until roughly one month prior to trial, which was nearly two years after Veronica and her sister were removed from their home. We also observe that appellant waited nearly a full year after her daughters' removal from their home before she separated from Ronn Brooks, despite the fact that Mr. Brooks was not performing any requirements of the case plan directed toward making the girls feel safe and secure in their home environment.
 {¶ 75} With respect to the children's custodial history, the trial court found, and the record supports, that Veronica and Heather have been in the temporary custody of FCCS since March 22, 2000, a total of 27 months as of the conclusion of the trial on the permanent custody motion. See R.C. 2151.414(D)(3). Finally, with respect to the children's need for a legally secure placement, and whether the same can be achieved without a grant of permanent custody to FCCS, pursuant to R.C. 2151.414(D)(4), the trial court found that Veronica and Heather need a structured, safe and secure environment, and that they will suffer further emotional trauma if placed in an environment where there is a potential for violence and harm. The court found that neither child feels that appellant's home will be safe, and that appellant cannot provide the level of stability and safety the girls need. The court found that the girls' foster home, in which they had lived for over two years by the conclusion of trial, did provide the safety, security and support that they need to continue to improve. These findings were amply supported by the testimony of record, and were uncontroverted by any evidence provided by appellant.
 {¶ 76} In light of the foregoing, we conclude that the trial court properly determined that the best interests of Veronica and Heather Brooks would be served by awarding permanent custody of the girls to FCCS. Despite the laudable improvements appellant has made in her own life (e.g., divorcing Ronn Brooks, attending counseling, maintaining steady employment, and undertaking educational pursuits), we agree that it would not be in the bestinterests of her children, which is the key inquiry here, to return to her custody at any time in the future. Accordingly, appellant's sixth and seventh assignments of error are overruled.
 {¶ 77} In her eighth assignment of error, appellant argues that the trial court erred in failing to appoint separate counsel for Veronica and Heather. She directs our attention to the opinion of the Supreme Court of Ohio in the case of In reWilliams, 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110. There, the court held, "[p]ursuant to R.C. 2151.352, as clarified by Juv.R. 4(A) and Juv.R. 2(Y), a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding and, therefore, is entitled to independent counsel in certain circumstances." Id. at syllabus.
 {¶ 78} In In re Williams, one of the children subject of the permanent custody motion had repeatedly expressed his desire to remain with his mother. The guardian ad litem recommended that the motion for permanent custody be granted with respect to this child. The trial court appointed a separate attorney to represent the child, but only for the limited purpose of filing a response to the motion for permanent custody stating the child's position with respect to same. The court ruled that there was no need to appoint an attorney to fully represent the child's interests after the limited-appointment attorney filed a brief statement indicating the child's wish to return to his mother.
 {¶ 79} The Supreme Court of Ohio affirmed the court of appeals' decision to reverse and remand for an unlimited appointment of an attorney to represent the child, along with a new trial. The court began by noting that the plain language of R.C. 2151.352 provides for the right to appointed counsel for every child "not represented by the child's parent, guardian, or custodian" in a permanent custody proceeding. See, also, Stateex rel. Asberry v. Payne (1998), 82 Ohio St.3d 44,693 N.E.2d 794. The In re Williams court approved of the court of appeals' recognition that, "courts should make a determination, on a case-by-case basis, whether the child actually needs independent counsel, taking into account the maturity of the child and the possibility of the child's guardian ad litem being appointed to represent the child." Id. at 403, ¶ 17.
 {¶ 80} The court also apparently approved of the court of appeals' holding that, in some instances, pursuant to Juv.R. 4(C) and R.C. 2151.258(H), a guardian ad litem can serve a dual role as both the guardian ad litem and the juvenile's attorney, and thereby fulfill the juvenile's right to counsel, so long as there has been an express dual appointment. Id. at ¶ 18. However, this is so only when the attorney who has been appointed to serve in both capacities recommends a disposition not in conflict with the juvenile's wishes. If such a conflict arises, the juvenile court must appoint independent counsel to represent the child. Ibid.
 {¶ 81} In the present case, appellant argues that it is the "best procedure" to appoint separate counsel for juveniles "in contentious cases." She goes on to argue that she was prejudiced by the trial court's failure to appoint separate counsel for Veronica and Heather, but she does not elaborate to any degree as to how and to what extent she suffered such prejudice. She later argues that, since there was no dual appointment in this case, Veronica and Heather were not represented at trial at all.
 {¶ 82} In light of the In re Williams decision, specifically that a child who is the subject of a proceeding in juvenile court to terminate parental rights is a party thereto and is entitled to independent counsel in certain circumstances, we must determine whether this case involves circumstances where independent counsel must be appointed.
 {¶ 83} FCCS points out that there is no record evidence demonstrating that Veronica's and Heather's wishes were incongruent with the recommendation of the guardian ad litem that permanent custody be awarded to FCCS. The record reveals that the guardian ad litem, who indicated in her written report that she had interviewed Veronica but not Heather, expressed strong support for a grant of permanent custody. She told the court that appellant and Ronn Brooks have "failed miserably" at providing love, nurturing and stability to the children, and she described the destructive patterns of emotional, psychological, physical and sexual abuse present in the family as "long standing and insidious."[11] She also noted, "[i]f there is a cure, it cannot be found within the framework of their immediate family, nor have there been any substantial attempts by either parent to remedy or heal these situations."[12]
 {¶ 84} Finally, the guardian ad litem implored the court:
Let's not sacrifice these children any longer, and this can only be accomplished by giving them a chance to have a positive and safe living environment and that can best be accomplished by the Court granting Children Services' motion for PCC, which is undeniably in the children's best interest.[13]
 {¶ 85} It is true that, in the present case, the trial court did not make a dual appointment, and, as such, the guardian ad litem was acting only to perform the functions thereof as enumerated in R.C. 2151.281(I); she was not acting as counsel for Veronica and Heather. It is also true that the guardian ad litem never told the court what the girls' wishes were with regard to placement. However, we are satisfied that the court was made adequately aware of the girls' wishes with respect to placement, for purposes of ascertaining whether separate counsel should have been appointed for the girls, through other credible evidence.[14]
 {¶ 86} Dr. Rhonda Lilley testified that, on every occasion in which she met with Heather, including the last occasion, which occurred two months prior to trial, Heather indicated that she did not want to return to the custody of her mother. Dr. Lilley testified that, as recently as the month before trial began, Veronica would threaten to run away and to kill herself whenever the topic of returning to her home was raised. Dr. Lilley also testified that the Veronica had repeatedly told her that she did not trust her mother, and that she was afraid of going home. Dr. Lilley quoted Veronica as having said to her, "I don't want to live with my mother because she never protected me and she probably never will. I've figured it out."[15]
 {¶ 87} Upon a thorough review of the entire record, based upon the uncontroverted testimony of Dr. Lilley that the children desire not to be returned to their mother's custody, along with abundant evidence supporting the trial court's findings that the children's best interests are served by awarding permanent custody to FCCS, we conclude that any error by the trial court or the guardian ad litem in not directly probing the children's wishes, for purposes of determining whether they should be appointed separate counsel, was harmless. Following In reWilliams, juvenile courts and guardians ad litem would be well advised to more specifically ascertain and address the wishes of the children so as to guard against denial of the children's right to counsel; however, we cannot say, given all the facts and circumstances present in this case, that In re Williams would require the appointment of separate counsel for either Veronica or Heather Brooks. Accordingly, we overrule appellant's eighth assignment of error.
 {¶ 88} For all of the foregoing reasons, appellant's eight assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
Judgment affirmed.
Petree and Klatt, JJ., concur.
[1] "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet the test * * * and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Strickland, supra, at 693. (Citation omitted.)
[2] The court expressly noted that, despite the lack of specificity in the objections, "this Court will address [the] objection since the best interest of the child is of paramount concern to this Court." (Mar. 7, 2003 Decision and Entry, at 3.)
[3] She also appears to argue that her counsel should have objected to the report's brevity and lack of up-to-date information. However, R.C. 2151.414(C) does not prescribe any particular form or content for the report of a guardian ad litem.In re Bowers, 10th Dist. No. 02AP-347, 2002-Ohio-5084, at ¶ 34. Accordingly, to the extent that appellant bases any portion of her ineffective assistance claim on the failure to object to the content or form of the guardian's report, her claim is without merit.
[4] Brief of appellant, at 21.
[5] This court in Brooks I determined that FCCS' motion for permanent custody pursuant to R.C. 2151.414(B)(1)(d) was properly before the court, despite the fact that the entire 22-month period mentioned therein had not elapsed at the time of the filing of the motion. In re Brooks, 10th Dist. No. 03AP-282, 2003-Ohio-5348, at ¶¶ 15, 18.
[6] R.C. 2151.414(E)(1) specifically requires an inquiry into the degree of the parents' compliance with the case plan, for purposes of determining whether the child cannot be placed with either parent within a reasonable time, or should not be placed with the parents. However, R.C. 2151.414(E) is not implicated in this case because it is not triggered by the filing of a permanent custody motion based on R.C. 2151.414(B)(1)(d). To the extent that appellant cited cases in her brief that involved R.C.2151.414(E)(1) inquiries, her reliance thereon is misplaced.
[7] Apr. 11, 2002 Tr. at 28.
[8] Id. at 61.
[9] Id. at 61-62.
[10] Id. at 77.
[11] June 19, 2002 Tr., at 36-37.
[12] Id. at 37.
[13] Id. at 38.
[14] There is some reference in the trial transcript to Veronica having written letters directly to the trial judge in which she indicated her preferences with respect to placement. However, the letters themselves are not part of the record.
[15] Apr. 11, 2002 Tr. at 72.