OPINION
{¶ 1} Appellant, Alice Bellar, the biological mother of R.A. Miller ("R.A.") and D. Miller ("D.L."), appeals from the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, permanently committing the minor children to the custody of appellee, Franklin County Children Services ("FCCS"), for purposes of adoption. For the reasons that follow, we affirm.
 {¶ 2} R.A. and D.L. are the natural children of appellant and Richard Miller. R.A. was born on November 24, 1997. D.L. was born on August 17, 1999. The children were removed from their parents' home in July 2000 because of deplorable housing conditions, the children being undernourished and underdeveloped, and R.A. having experienced severe burns from scalding water spilling on her.
 {¶ 3} Megan Sparks, the children's caseworker testified in part as follows:
* * * There were roaches, gnats; feces on the wall. There — the kids were undernourished. [D.L.] didn't have — had very little hair, no teeth. There were roaches in her crib, feces on the walls, beer cans and paint bottles were around the home from father huffing and the kid — the children were — were removed at that time. (Tr. 78.)
 {¶ 4} The children were placed in foster care, and have remained in the same foster home throughout the pendency of the case. The foster parents are a prospective adoptive home for both children. A guardian ad litem was appointed, but he was not given a dual appointment, and the children were not appointed separate representation.
 {¶ 5} Megan Sparks testified that when she became the caseworker in April 2001, the parents were homeless. With the aid of a community service worker, the parents obtained a two-bedroom apartment. The landlord sought to evict them after an outbreak of roaches, but with the aid of social services, the apartment was fumigated and the parents avoided eviction.
 {¶ 6} The parents attended and completed parenting classes, although the caseworker remained concerned that they were still not demonstrating proper parenting techniques during supervised visits. The parents also were referred to counseling and other services. Appellant was treated for depression. Richard Miller was working to manage his temper, and completed approximately 100 of 180 drug screens. The agency had put into place a safety plan to prevent the children from coming into contact with Richard Miller's brother, Tommy, a convicted rapist with a diagnosis of paranoid schizophrenia, and Mr. Miller's mother, the perpetrator in a sexual abuse case. Unsupervised visits were initiated and then suspended when Mr. Miller's mother and brother came by the house on two occasions when the girls were visiting.
 {¶ 7} Neither parent had worked or looked for employment. Richard Miller had a number of health problems for which he took many medications. He sometimes needed assistance in obtaining refills for his prescriptions on a timely basis. Appellant received Social Security Insurance income of $564 per month plus food stamps. This income was barely enough to cover rent and utilities of $526 per month.
 {¶ 8} The caseworker testified that the children were bonded with their foster parents and were adamant about staying in the foster home. They consider the foster siblings and the foster parents' children to be their brothers and sisters and refer to them as such. Appellant testified the children had recently told her they wanted to go home. The guardian ad litem testified that early on, the children had vacillated as to whether they wanted to go home or stay with the foster parents. However, in recent months, he indicated the children expressed the desire to remain with the foster family. The guardian ad litem had not interviewed the children himself; he reported what the lay guardian who met with the children had told him. At that point, the guardian ad litem made the decision not to request separate counsel for the children.
 {¶ 9} After the close of evidence and the submission of the case, Richard Miller passed away suddenly. As a result of Mr. Miller's death, FCCS filed a motion to reopen the evidence. However, prior to ruling upon the motion, the trial court made its decision and entered judgment in favor of FCCS.
 {¶ 10} Appellant filed a timely notice of appeal, assigning as error the following: [I.] The trial court erred to the prejudice of the appellant by failing to appoint separate counsel for Ruth Ann Miller and Diana Miller.
[II.] The trial court abused its discretion by failing to reopen the case, when the children's father, a party to the case, died after the close of evidence but prior to the issuance of the final judgment.
 {¶ 11} In her first assignment of error, appellant contends the trial court was required to conduct an independent examination as to whether the children should have been appointed separate counsel. Appellant points to what she characterizes as conflicting evidence concerning the children's wishes, and statements in the guardian ad litem report that indicated the children had conflicting desires about placement.
 {¶ 12} We note that the guardian ad litem's report was completed prior to trial, and circulated to the parties with the exception of FCCS. In his testimony, the guardian ad litem clarified that his present understanding was that the children wished to remain with their foster parents.
 {¶ 13} The Supreme Court of Ohio has addressed the issue of appointment of counsel for children in In re Williams, 101 Ohio St.3d 398,2004-Ohio-1500. The syllabus of that opinion states:
Pursuant to R.C. 2151.352, as clarified by Juv.R. 4(A) and Juv.R. 2(Y), a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding and, therefore, is entitled to independent counsel in certain circumstances.
 {¶ 14} This court, in In re Brooks,
Franklin App. No. 04AP-164, 2004-Ohio-3887, made a determination that even when a guardian ad litem did not tell the court what the children's wishes were regarding placement, the trial court was made aware through other evidence of what the children's wishes were, and accordingly, any error in not directly probing the children's wishes was harmless. Id. at ¶ 87. Because the children's wishes were not in conflict with those of the guardian ad litem, this court held that In re Williams would not require the appointment of separate counsel for the children. Id.
 {¶ 15} This case is similar in that there is ample evidence that no conflict exists between the recommendation of the guardian ad litem and the wishes of the children. Moreover, the guardian ad litem was able to ascertain the wishes of the children through the lay guardian. Read in context, the record shows the case has been pending for quite some time. Early on, the children were ambivalent about where they wished to live, but in recent months they exhibited clear bonds to their foster family and expressed adamant desires to remain with them. Appellant testified that the girls want to live with her, but the trial court was within its bounds to discount this testimony. Accordingly, there was no error in the trial court's decision not to inquire further into appointment of separate counsel. The first assignment of error is not well-taken.
 {¶ 16} In her second assignment of error, appellant contends the trial court abused its discretion in not reopening the case after the natural father of the children died. Appellant did not raise this issue before the trial court and is attempting to bootstrap her desire to have the case reopened with a motion that FCCS filed and subsequently sought to withdraw, albeit after judgment. We believe appellant's failure to raise the matter before the trial court amounts to a waiver of the argument. See In re Adoption of B.G., Franklin App. No. 02AP-810, 2002-Ohio-5910 at ¶ 8 and 9 (appellant's failure to file objections in the probate court amounts to waiver, and appellant could not bootstrap his argument on paternal grandparents' objections since grandparents were not appealing probate court's determination).
 {¶ 17} In any event, there was no abuse of discretion in the trial court's impliedly overruling the motion to reopen. In an abundance of caution, the trial court also addressed a motion for reconsideration filed by appellant in a judgment entry granting a motion for visitation and denying the motion for reconsideration, stating:
On the mother's motion for further hearing on the impact of the court's decision of the father's death after the hearing the court overrules the mother's motion for two reasons. The Court has no jurisdiction for reconsideration pending appeal and, if the court could hear further evidence concerning the father's death and the court having granted permanent custody motion, the court finds there was no evidence presented that suggested the father was the primary or more likely cause of inadequate care of the children. There was clear and convincing evidence that the mother could not meet the needs of the children, even in the absence of the father.
 {¶ 18} We agree. The trial court was without jurisdiction to rule on the motion to reconsider. There was ample evidence in the record of the mother's inability to meet the needs of the children, and the law does not require the doing of a vain act. Remand for consideration of the father's death would be futile. The second assignment of error is overruled.
 {¶ 19} Based on the foregoing, appellant's two assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
Brown, P.J., and Klatt, J., concur.