OPINION
{¶ 1} Appellant Rebecca Shores ("Rebecca") appeals from the February 7, 2007 Judgment Entry of the Court of Common Pleas of Allen County, Juvenile Division, terminating her parental rights and granting permanent custody of Daniel Shores (aka Ray Daniel Shores) (D.O.B. 7/25/01) and Laketta Shores (aka Lacy Shores) (D.O.B. 5/14/93) to the Allen County Children Services Board ("ACCSB").
 {¶ 2} On March 28, 2004 the ACCSB removed Daniel and Laketta from Rebecca's home and took the children into temporary custody. This removal occurred after the Lima Police Department contacted the ACCSB regarding two children (subsequently determined to be Daniel and Laketta) who had been left *Page 3 
alone and unsupervised in their home.[1] On March 29, 2004 the juvenile court magistrate conducted a shelter care hearing and ordered that the children remain in the shelter care of the ACCSB. However, at some point on March 29, 2004 the children were removed from shelter care and returned to Rebecca's custody.[2]
 {¶ 3} On March 30, 2004 the ACCSB filed complaints alleging that Daniel and Laketta were neglected and dependent as defined in Ohio Revised Code sections 2151.03 and 2151.04.[3]
 {¶ 4} Shortly after the children were placed back with Rebecca, the ACCSB was contacted by Rebecca's daycare provider, informing the agency that Rebecca had appeared to be under the influence of alcohol when picking the children up from daycare on numerous occasions. The ACCSB directed the daycare to immediately call the ACCSB or the police if this occurred again. On April 8, 2004 the Lima Police Department received a call from Rebecca's daycare *Page 4 
provider advising that Rebecca had picked up her children and was possibly intoxicated. Police officers arrived in the area and observed Rebecca making several traffic violations. The officers executed a traffic stop and subsequently arrested Rebecca for operating a vehicle under the influence of alcohol. Daniel and Laketta were removed from Rebecca's custody and returned to the custody of the ACCSB.
 {¶ 5} On April 21, 2004 the magistrate conducted a preliminary conference wherein Rebecca appeared in person and was advised of her right to counsel and advised of the possible dispositional orders which could be entered upon adjudication of Daniel and Laketta. Rebecca requested appointment of counsel and an attorney was subsequently appointed to represent her. Additionally, a guardian ad litem ("GAL") was appointed to represent the interests of the children.
 {¶ 6} On May 5, 2004 the court conducted an adjudicatory hearing on the merits of the ACCSB's complaints. At the close of the evidence, the magistrate found Daniel and Laketta to be neglected and dependent children as alleged in the complaints and set a dispositional hearing for June 21, 2004. (See May 7, 2004 Magistrate's Decision). On May 20, 2004 the juvenile court issued a Judgment Entry of Adjudication wherein the court adopted the findings of fact contained in the May 7, 2004 Magistrate's Decision, adopted the Magistrate's Decision as *Page 5 
orders of the court, adjudicated the children neglected and dependant as alleged in the complaints, and ordered that the children remain in the shelter care of the ACCSB pending the dispositional hearing set for June 21, 2004.
 {¶ 7} At the dispositional hearing, a caseworker for the ACCSB testified that case plans had been developed for both children and filed with the court, requesting that Rebecca participate in counseling, attend parenting classes and develop her parenting skills, undergo an alcohol and drug assessment and follow all counseling recommendations, and visit with the children. In a June 24, 2004 Magistrate's Decision, the magistrate approved the case plans submitted by the ACCSB, but found that Rebecca had not met the goals and objectives of the case plans. Accordingly, the magistrate found that it was in the best interests of Daniel and Laketta to be placed in the temporary custody of the ACCSB.
 {¶ 8} On August 13, 2004 the juvenile court issued a Judgment Entry adopting the June 24, 2004 Magistrate's Decision as an Order of the court and ordered that the appropriate disposition was for the children to be placed in the temporary custody of the ACCSB. Additionally, the court set a review hearing for March 30, 2005 and noted that this Judgment Entry would terminate on March 30, 2005 unless motions to terminate, modify or extend were filed by February 28, 2005. *Page 6 
 {¶ 9} On February 18, 2005 the ACCSB filed a motion to extend temporary custody of Daniel and Laketta after Rebecca tested positive for cocaine and missed scheduled visitations. The magistrate conducted a hearing on the ACCSB's motion on June 17, 2005 and determined that it would be in the best interests of the children that the existing order of temporary custody with the ACCSB be extended for an additional six month period. (See June 21, 2005 Magistrate's Decision). On June 25, 2005 the juvenile court issued a Judgment Entry ordering that the ACCSB's temporary custody of Daniel and Laketta be continued for an additional six month period.
 {¶ 10} On October 17, 2005 the ACCSB filed another motion to extend temporary custody after Rebecca continued to test positive for marijuana and alcohol, failed to attend counseling sessions as required by her case plan, and missed scheduled visitations. On January 5, 2006 Rebecca filed a motion to modify temporary custody to protective supervision. The magistrate conducted a hearing on these motions on January 11, 2006 and granted the ACCSB's motion to extend temporary custody for an additional six month period.[4] On February 23, 2006 the juvenile court issued a Judgment Entry ordering that the ACCSB's *Page 7 
temporary custody of Daniel and Laketta be continued for an additional six month period.
 {¶ 11} On February 28, 2006 the ACCSB filed a motion requesting permanent custody of Daniel and Laketta.[5] After several continuances, a hearing was held on the issue of permanent custody on September 27, 2006 and this matter was taken under advisement by the juvenile court. On February 7, 2007 the juvenile court issued a Judgment Entry terminating Rebecca's parental rights and awarding permanent custody of Daniel and Laketta to the ACCSB.
 {¶ 12} Rebecca now appeals, asserting three assignments of error.
 ASSIGNMENT OF ERROR NO. 1 THAT COUNSEL FOR THE MOTHER WAS INEFFECTIVE THEREBY RENDERING THE RESULT OF THE PERMANENT CUSTODY HEARING IN DOUBT AS TO ITS RELIABILITY AND IN VIOLATION OF THE MOTHER'S CONSTITUTIONAL AND STATUTORY RIGHTS.
 ASSIGNMENT OF ERROR NO. 2 THE TRIAL COURT FAILED TO MAKE FINDINGS CONSISTENT WITH THE STANDARD OF CLEAR AND CONVINCING EVIDENCE. *Page 8 
 ASSIGNMENT OF ERROR NO. 3 THE FINDING OF PERMANENT CUSTODY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 13} Prior to addressing Rebecca's assignments of error, we must first address the nature of this appeal. Our review of a grant of permanent custody begins by noting that "[i]t is well recognized that the right to raise a child is an `essential' and `basic' civil right."In re Franklin, 3rd Dist. Nos. 9-06-12, 9-06-13, 2006-Ohio-4841 citing In re Hayes (1997), 79 Ohio St.3d 46, 48,679 N.E.2d 680. The Supreme Court of Ohio has held that a parent "must be afforded every procedural and substantive protection the law allows."In re Hayes, supra, quoting In re Smith (1991), 77 Ohio App.3d 1, 16,601 N.E.2d 45.
 {¶ 14} Additionally, the trial court is vested with broad discretion in determining the allocation of parental rights and responsibilities for the care of minor children. Blacker v. Wilhelm, 6th
Dist. No. WD-04-003, 2005-Ohio-317 citing Miller v. Miller (1983),37 Ohio St.3d 71, 74, 523 N.E.2d 846. As a trial court is in the best position to weigh witness credibility and evaluate a child's needs, the standard for reviewing a trial court's grant of permanent custody is abuse of discretion. In re Rinaldi, 3rd Dist. No. 1-02-74, 2003-Ohio-2562. Therefore, absent an abuse of that discretion, a trial court's decision regarding the allocation of parental rights and responsibilities for a minor child must be upheld. Blacker, supra, citing Masters v. Masters (1994), 69 Ohio St.3d 83, 85, *Page 9 630 N.E.2d 665. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id. Thus, it is within these constructs that we must examine Rebecca's assignments of error.
 Assignment of Error No. 1 {¶ 15} In her first assignment of error, Rebecca alleges that her counsel at the permanent custody hearing was ineffective, thus violating her constitutional and statutory rights and rendering the result of the permanent custody hearing in doubt.
 {¶ 16} R.C. 2151.352 provides the parents with a right to counsel in proceedings to terminate parental rights. The right to counsel includes a right to the effective assistance of counsel: "[w]here the proceeding contemplates the loss of parents' `essential' and `basic' civil rights to raise their children . . . the test for ineffective assistance of counsel used in criminal cases is equally applicable to actions seeking to force the permanent, involuntary termination of parental custody."In re Shrider, 3rd Dist. No. 16-05-02, 2006-Ohio-2792
citing In re Heston (1998), 129 Ohio App.3d 835, 827; see also, In reBrodbeck (1994), 97 Ohio App.3d 652. *Page 10 
 {¶ 17} The Supreme Court of Ohio has adopted a two-part test for determining claims of ineffective assistance of counsel in criminal prosecutions. See State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, at paragraph two of the syllabus, (following Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct.2052, 80 L.Ed.2d 674). This standard-two part test for establishing ineffective assistance of counsel also applies to permanent custody proceedings. In re T.P.
2nd Dist. No. 20604, 2004-Ohio-5835.
 {¶ 18} Under this test, "[Appellant] must first show that his attorney's performance `fell below an objective standard of reasonableness,' and must then show that `there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."' State v. Jones, 3rd Dist. No. 02-2000-07, 2000-Ohio-1879 quotingStrickland, 466 U.S. at 688, 694. As to the first prong of the test, courts are to afford a high level of deference to the performance of trial counsel. Bradley, 42 Ohio St.3d at 142. The second prong regarding reasonable probability requires a probability sufficient to undermine the confidence in the outcome of the trial. Id.
 {¶ 19} Additionally, we note that Appellant bears the burden of proof on the issue of counsel's ineffectiveness, since in Ohio a properly licensed attorney is presumed competent. State v. Calhoun (1999),86 Ohio St.3d 279, 289, 714 N.E.2d 905. Moreover, Appellant must overcome a strong presumption that the *Page 11 
challenged action constitutes trial strategy. State v. Carter (1995),72 Ohio St.3d 545, 558, 651 N.E.2d 905.
 {¶ 20} Regarding her claim of ineffective assistance of counsel, Rebecca specifically alleges that she was denied effective assistance of counsel because her trial counsel failed to cross-examine the children's GAL. Rebecca alleges that this failure to challenge the evidence presented in the GAL's report acted as a failure of counsel to protect her rights.
 {¶ 21} We note that R.C. 2151.414 establishes the procedures a court must follow and the findings it must make before granting a motion for permanent custody filed pursuant to R.C. 2151.413. In re Arnold, 3rd Dist. Nos. 1-04-71, 1-04-72, 1-04-73, 2005-Ohio-1418. Pursuant to R.C. 2151.414(B)(1), before a trial court can grant permanent custody of a child to a moving agency, it must find, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the subsections of R.C.2151.414(B)(1) apply. Id. See also In re Franklin, 3rd
Dist. Nos. 9-06-12, 9-06-13, 2006-Ohio-4841.
 {¶ 22} Additionally, R.C. 2151.414(C) states:
 In making the determinations required by this section . . . a court shall not consider the effect the granting of permanent custody to the agency would have upon any parent of the child. A written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of the hearing . . . but shall not be submitted under oath. *Page 12 
 {¶ 23} In support of her contention that trial counsel was ineffective for failing to cross-examine the GAL, Rebecca points our attention toIn re Hoffman (2002), 97 Ohio St.3d 92, 94, 776 N.E.2d 485 wherein the Supreme Court of Ohio addressed the issue of whether, in a permanent custody action, a party may cross-examine the guardian ad litem, notwithstanding the language of R.C. 2151.414(C).
 {¶ 24} In interpreting R.C. 2151.414(C), the Supreme Court of Ohio held as follows:
 [f]rom the plain language of the statute, it is reasonable to conclude that the purpose of enacting R.C. 2151.414(C) is to give the court information, in addition to that elicited at the hearing, to assist it in making sound decisions concerning permanent custody placements. This legislative enactment however, cannot come at the expense of a parent's opportunity to defend herself against the possibility of termination of her rights.
 * * *
 Due process necessitates that appellee should have had the right to cross-examine the guardian ad litem, since the trial court relied upon the report. As such, notwithstanding R.C. 2151.414(C), we hold that in a permanent custody proceeding in which the guardian ad litem's report will be a factor in the trial court's decision, parties to the proceeding have the right to cross-examine the guardian ad litem concerning the contents of the report and the basis for a custody recommendation. Without these safeguards, there are no measures to ensure the accuracy of the information provided and the credibility of those who made statements. (Emphasis added).
In re Hoffman (2002), 97 Ohio St.3d 92 at 94-95, 97.
 {¶ 25} In the present case, our review of the transcript of the September 27, 2006 permanent custody hearing reveals that during his direct examination of *Page 13 
Rebecca, Rebecca's counsel elicited testimony regarding the performance of the children's GAL. In particular, Rebecca's counsel elicited testimony that the GAL had never been to any of Rebecca's residences, including her current residence, and that Rebecca had not been contacted by the GAL in "quite awhile."
 {¶ 26} After closing arguments were presented, the trial court addressed the GAL regarding her report and recommendation that the trial court grant the ACCSB's motion for permanent custody. The court asked the GAL if anything had occurred during the hearing that caused her to change her recommendation, and she said no. The court then allowed the GAL to make a statement regarding her report and recommendation. The GAL briefly addressed the court, related her opinions about the children's behavior and their need for permanency, and reiterated her recommendation of permanent custody.
 {¶ 27} Rebecca alleges that although her counsel (through his direct examination of her) laid a foundation that the GAL failed to adequately investigate Rebecca's home situation or maintain regular contact with Rebecca, counsel failed to follow up with specific questions to the GAL regarding her report and recommendation absent that contact with Rebecca. Furthermore, Rebecca alleges that upon finding that the court intended to consider the GAL's written report and recommendation, counsel failed to ask the court for an opportunity to cross-examine the GAL about her report. Rebecca contends that her counsel's failure to *Page 14 
exercise his right to cross-examination allowed the trial court to make a decision without any vetting of the GAL's report or its conclusions, and his failure to do so renders the outcome of the permanency hearing unreliable.
 {¶ 28} Initially, we find that Rebecca's reliance on In reHoffman to support her contention that trial counsel was ineffective for failing to cross-examine the GAL is misplaced. In Hoffman, the Supreme Court of Ohio held that "parties to the proceeding have the right to cross-examine the guardian ad litem concerning the contents of the report and the basis for a custody recommendation." Hoffman, supra at 97. Although Hoffman gives parties the right to cross-examine the GAL about their report, it does not mandate that parties shall engage in or are required to engage in such cross-examination, nor does it stand for the proposition that counsel's failure to cross-examine the GAL about their report amounts to ineffective assistance of counsel.
 {¶ 29} Furthermore, in reviewing Rebecca's counsel's performance, we must accord deference to counsel's trial tactics and cannot examine counsel's choices through hindsight. See Strickland, supra,466 U.S. at 689. Moreover, an appellate court reviewing an ineffective assistance of counsel claim must not scrutinize trial counsel's strategic decision to engage, or not engage, in a particular line of questioning on cross-examination. In re Brooks, 10th Dist. Nos. 04AP164, *Page 15 
04AP202, 04AP165, 04AP201, 2004-Ohio-3887 citing State v. Revels, 12th Dist. No. CA2001-09-223, 2002-Ohio-4231.
 {¶ 30} In the present case, the record reveals no basis for this court to conclude that cross-examination of the GAL would have revealed any facts that would have changed the outcome of the trial, or would even have been favorable to appellant. See also Brooks, supra at ¶ 40 citingState v. Mehlado, 10th Dist. No. 02-AP-458, 2003-Ohio-4763, appeal not accepted for review, 100 Ohio St.3d 1547. See also, State v. Brown (1988), 38 Ohio St.3d 305; State v. Covington, 10th Dist. No. 02-AP-245, 2002-Ohio-7037. In fact, Rebecca's counsel's decision not to cross-examine the GAL may very well demonstrate counsel's competence and skill in light of the fact that the GAL expressed strong support for the ACCSB's motion for permanent custody. See Brooks, supra.
 {¶ 31} Additionally, we note that the record reflects Rebecca's counsel's zealous and thorough representation of Rebecca's interests throughout the hearing. Based on the foregoing, we find that Rebecca has failed to establish that her trial counsel's performance was deficient in any form. Moreover, she has failed to show prejudice resulting from any alleged deficiency. Thus, we conclude that the outcome of the permanency hearing would not have been different with any cross-examination of the GAL. *Page 16 
 {¶ 32} Therefore, we find that counsel's decision not to cross-examine the GAL was part of counsel's legal strategy, and we find no ineffective assistance with respect thereto. Accordingly, Rebecca's argument lacks merit and we overrule her first assignment of error.
 Assignments of Error Nos. 2 and 3 {¶ 33} For ease of discussion, we elect to address Rebecca's second and third assignments of error together. In her second and third assignments of error, Rebecca alleges that the findings made by the trial court to support its grant of permanent custody of Daniel and Laketta to the ACCSB are not consistent with the standard of clear and convincing evidence, and alleges that the court's grant of permanent custody to the ACCSB is against the manifest weight of the evidence.
 {¶ 34} When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court proceeding, the standard of review is the same as that in criminal cases. In re DM.
9th Dist. Nos. 22732 and 22749, 2005-Ohio-6740 citingTewarson v. Simon (2001), 141 Ohio App.3d 103, 115, 750 N.E.2d 176. In reviewing whether the trial court judgment was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541. In doing so, the reviewing court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of *Page 17 
witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." Thompkins, 78 Ohio St.3d at 387, 678 N.E.2d 541; see also State v. Andrews 3rd Dist. No. 1-05-70,2006-Ohio-3764; State v. Martin (1983), 20 Ohio App.3d 172,485 N.E.2d 717.
 {¶ 35} In making this determination, the Supreme Court of Ohio has outlined eight factors for consideration, which include "whether the evidence was uncontradicted, whether a witness was impeached, what was not proved, that the reviewing court is not required to accept the incredible as true, the certainty of the evidence, the reliability of the evidence, whether a witness' testimony is self-serving, and whether the evidence is vague, uncertain, conflicting, or fragmentary."State v. Apanovitch (1987), 33 Ohio St.3d 19, 23-24, 514 N.E.2d 394, citing State v. Mattison (1985), 23 Ohio App.3d 10, 490 N.E.2d 926.
 {¶ 36} Before a juvenile court may terminate parental rights and award permanent custody of a child to a properly moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant *Page 18 
of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). In re DM., 2005-Ohio-6740
at ¶ 11 citing R.C. 2151.414(B)(1)(a) through (d) and (2); see, also,In re William S. (1996), 75 Ohio St. 3d 95, 99, 661 N.E.2d 738.
 {¶ 37} In analyzing the first prong of the permanent custody test, we note that the trial court must first determine, by clear and convincing evidence, whether any of the subsections of 2151.414(B)(1) have been met. In the present case, the evidence demonstrated that Daniel and Laketta were not abandoned or orphaned. See R.C. 2151.414(B)(1)(b) and (c). Additionally, it is clear that they had been in the temporary custody of the ACCSB for at least 12 months of a consecutive 22-month period prior to the ACCSB filing its motion for permanent custody.[6]
See R.C. 2151.415(B)(1)(d). Therefore, we shall focus our analysis on Rebecca's claim that the ACCSB did not use reasonable efforts to reunify her children with her and that the trial court erred in determining that the children could not be placed with her within a reasonable time or should not be placed with her based on an analysis under R.C.2151.414(E). See R.C. 2151.414(B)(1)(a). *Page 19 
 {¶ 38} R.C. 2151.414(E) states, in relevant part, as follows:
 (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence . . . that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;
 ** *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate *Page 20 with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 * * *
 (14) The parent for any reason is unwilling to provide food, clothing shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
 {¶ 39} At the September 27, 2006 permanent custody hearing, the ACCSB presented the testimony of Deputy Kirk Wilmoth ("Wilmoth"), a former security officer of the Allen County Juvenile Court and current part-time deputy at Grampy's House, a visitation and exchange site for children and parents. Wilmoth testified that he had regular contact with Rebecca on Sundays when she would come and visit with her children. Wilmoth testified that approximately 75% of the Sundays he worked at Grampy's, Rebecca came to the visits with the odor of alcohol on her breath. Additionally, Wilmoth testified that two of Rebecca's visits were terminated because of her behavior related to the use of alcohol and that he detected an odor of alcohol on her at one of the scheduled court hearings.
 {¶ 40} The ACCSB also presented the testimony of caseworker Tobias Adkins ("Adkins") who testified that he was Rebecca's caseworker from 2004 until February of 2006. Adkins testified that the ACCSB created a case plan for Rebecca with the initial goal of reunification. Adkins testified that although Rebecca had substantially complied with the case plan goals and objectives in that she had completed parenting classes, participated in a drug and alcohol assessment *Page 21 
and completed drug and alcohol counseling, every time the agency tried to allow Rebecca unsupervised visitations (as recently as January, 2006), "something would happen . . . usually it was a positive screen that would result in the agency having to pull back and say we need more clean screens done." Specifically, Adkins testified that during his tenure as Rebecca's caseworker, Rebecca tested positive for cocaine four times, tested positive for marijuana three times, tested positive for alcohol three times, and had one screen that was positive for both alcohol and marijuana.
 {¶ 41} Additionally, Adkins testified that he had had conversations with Rebecca about her not fully meeting the agency's expectations, the need for regular and consistent counseling, and the need for consistent negative drug and alcohol screens. Adkins also testified that during his tenure as Rebecca's caseworker, he requested that Rebecca complete 122 drug screens, however, Rebecca failed to comply with these requests on 40 occasions. Furthermore, Adkins testified that out of the 94 visitations that had occurred with Rebecca and her children, Rebecca failed to appear for 13 of those visitation opportunities.
 {¶ 42} The trial court also heard testimony from Rebecca that she met with two different counselors for drug and alcohol counseling. However, the evidence demonstrated that despite these attempts at counseling, Rebecca continued to use illegal substances and consume alcohol and continued to maintain a relationship *Page 22 
with a man she knew abused drugs. Additionally, the evidence presented at the permanent custody hearing also demonstrated that although Rebecca was offered admission into the St. Rita's Medical Center Drug and Alcohol Program, she failed to take advantage of this opportunity and admit herself into such program.
 {¶ 43} After considering the evidence presented at the September 27, 2006 permanent custody hearing as well as the written and oral recommendations of the GAL, the trial court issued a Judgment Entry wherein the court concluded that Rebecca had failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside of the children's home.[7]Thus, the trial court concluded that the children could not be placed back into Rebecca's home within a reasonable time and should not be placed with Rebecca. (See February 7, 2007 Judgment Entry, paragraph 14). In support of these conclusions, the trial court considered the factors set forth in R.C.2151.414(E) and specifically referenced its findings in relation to R.C.2151.414(E)(2), (E)(4), and (E)(14) based upon the testimony presented at the permanent custody hearing. (See February 7, 2007 Judgment Entry paragraphs 9-13). *Page 23 
 {¶ 44} Based on the foregoing, we find that the record is replete with clear and convincing evidence to support the trial court's finding that Daniel and Laketta could not be placed with Rebecca within a reasonable time or should not be placed with her based upon an analysis of the factors contained in R.C. 2151.414(E) so as to satisfy the first prong of the permanent custody test. Therefore we find that Rebecca's claim that the trial court erred in determining that the children should not be placed with her is not supported by the record.
 {¶ 45} Turning our attention to the second prong of the permanent custody test, the "best interest of the child" standard, we note that "[t]he best interest prong of the permanent custody test requires the agency to prove by clear and convincing evidence that permanent custody is in the best interest of the child. Clear and convincing evidence is that which will produce in the trier of fact `a firm belief or conviction as to the facts sought to be established.'" In re A.B.
9th Dist. No. 22438, 2005-Ohio-1273 at ¶ 9, citing
 {¶ 46} In re Adoption of Holcomb (185), 18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. An appellate court will not reverse a trial court's decision on parental rights and custody unless it finds that the decision is unsupported by "sufficient evidence to meet the clear and convincing standard of proof." In re Dylan C. (1997),121 Ohio App.3d 115, 121, 699 N.E.2d 107. *Page 24 
 {¶ 47} R.C. 2151.414(D) provides, in relevant part, as follows:
 (D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; * * *
 {¶ 48} At the September 27, 2006 permanent custody hearing, the trial court also heard testimony from another of Rebecca's former ACCSB caseworkers, Darrin Core. Core testified that he believed the agency had "exhausted all of our resources" and that the children "deserve better than having to go through that cycle [of Rebecca doing better and then doing poorly] for the next fifteen years."
 {¶ 49} Additionally, the court heard testimony from Theresa Huebner, the children's foster mother. Huebner testified that she and her husband have been the primary caregivers of Daniel and Laketta since April of 2004. Huebner testified at *Page 25 
length about the children's behavior in their home and specifically testified about their behavior after visitations with Rebecca.
 {¶ 50} At the close of evidence, the court allowed the GAL to make a statement regarding her report and recommendation. The GAL addressed the court, related her opinions about the children's behavior and their need for permanency, and reiterated her recommendation of permanent custody. The GAL's written report and recommendation was admitted into evidence.
 {¶ 51} After considering the evidence presented at the September 27, 2006 permanent custody hearing as well as the written and oral recommendations of the GAL, the trial court concluded as follows:
 Upon consideration of the evidence presented and the written and oral recommendation of the child's Guardian Ad Litem, the Court finds by clear and convincing evidence as follows:
 * * *
 Upon consideration of all relevant factors enumerated in Ohio Revised Code Section 2151.414(D), the Court finds that the child interacts well with foster parents; appears to be a happy child in the home of the foster parents, who have met his/her educational, medical and basic needs; and, the custodial history of the child reflects that the child has been in the temporary custody of Allen County Children Services Board and in foster placement continuously from April 8, 2004 until the present. The child's need of a legally secure permanent placement cannot be achieved without a grant of permanent custody to the agency.[8] *Page 26 
(See February 7, 2007 Judgment Entries, paragraph 14 (Daniel) and paragraph 15 (Laketta)).
 {¶ 52} Based on the foregoing, we find that the record is replete with clear and convincing evidence to support the trial court's finding that the grant of permanent custody of Daniel and Laketta to the ACCSB would be in the best interests of the children based upon an analysis of the factors contained in R.C. 2151.414(D) so as to satisfy the second prong of the permanent custody test.
 {¶ 53} Thus, we find that the trial court carefully considered all of the evidence presented and engaged in a thorough analysis of both prongs of the permanent custody test as set forth in R.C. 2151.414. Additionally, based on our review of the record, we cannot say that the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. Accordingly, we find that the trial court's termination of Rebecca's parental rights and grant of permanent custody of Daniel and Laketta to the ACCSB were not against the manifest weight of the evidence. Rebecca's second and third assignments of error are overruled.
 {¶ 54} Therefore, the February 7, 2007 Judgment Entries of the Court of Common Pleas of Allen County, Juvenile Division, terminating Rebecca's *Page 27 
parental rights and granting permanent custody of Daniel and Laketta to the Allen County Children Services Board are affirmed.
Judgments affirmed.
 PRESTON and WILLAMOWSKI, JJ., concur.
[1] According to the juvenile court magistrate's March 29, 2004 Findings of Fact, ACCSB was contacted by the Lima Police Department at 1:03 p.m. on March 28, 2004. Additionally, Laketta advised the police that their mother was out of state (Georgia), that a neighbor was supposed to be in and out of the home checking on her and Daniel, and that they had been alone since Friday (March 26, 2004) evening. According to the magistrate's Findings of Fact, Rebecca contacted the ACCSB at 8:53 p.m. on March 28, 2004 and advised that she had left the children in the care of her neighbors and that the children had returned to their apartment only to watch television.
[2] A document in the record to support this fact is the following testimony of an ACCSB caseworker as contained in the May 7, 2004 Magistrate's Decision: "Mother had contacted the agency at approximately 9:00 p.m. on March 28, 2004 advising the agency that she was on her way home and she believed the neighbors . . . would be watching her children. A staffing was held at the agency the next day, and the children were once again placed in the care and custody of the mother, with a safety plan initiated that mother would provide appropriate care for the children and would utilize suitable caretakers." See also transcript of May 5, 2004 proceedings, pp. 14-16.
[3] Although Daniel and Laketta each have their own case number, each with its own corresponding filings, for ease of discussion we shall refer to all pleadings, magistrate decisions and orders of the juvenile court in the singular, unless otherwise noted.
[4] At this hearing the magistrate also addressed the ACCSB's motion for review of case plan filed on October 24, 2005. In addition to granting the ACCSB's motion to extend temporary custody, the magistrate approved the October 24, 2005 case plan subject to modification of the visitation schedule. Rebecca's motion to modify temporary custody to protective supervision was ordered to be scheduled for hearing at a later date at the convenience of the court.
[5] As grounds for its motion for permanent custody, the ACCSB alleged violations of R.C. 2151.414(E)(1) (parent's continuous and repeated failure to substantially remedy the conditions causing the child(ren) to be placed outside their home); R.C. 2151.414(E)(2) (chronic . . . chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child(ren) at the present time); R.C. 2151.414(E)(4) (parents have demonstrated a lack of commitment toward the child(ren) by failing to regularly support, visit or communicate with the child when able to do so); R.C.2151.414(E)(14) (parents are unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional or sexual abuse . . . or neglect); and R.C. 2151.414(E)(16) (any other factor the court considers relevant).
[6] For the purposes of division (B)(1) of R.C. 2151.414, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section2151.28 of the Revised Code or the date that is sixty (60) days after the removal of the child from the home. In the instant case, Daniel and Laketta were adjudicated neglected and dependent by the juvenile court on May 20, 2004 and placed in the temporary custody of the ACCSB. A dispositional hearing was held on June 21, 2004 and on August 13, 2004, the juvenile court issued a Judgment Entry ordering that the appropriate disposition was for the children to be placed in the temporary custody of the ACCSB. The children remained in the temporary custody of the ACCSB without interruption as of the date the ACCSB filed its motion for permanent custody on February 28, 2006. Accordingly, the children were in the temporary custody of the ACCSB for at least 12 months of a consecutive 22-month period pursuant to R.C. 2151.414(B)(1)(d).
[7] We note that although the children were initially removed from Rebecca's care due to inadequate supervision and that the children were returned to Rebecca's care shortly thereafter, it was less than ten days after the initial removal that the children were once again removed from Rebecca's care due to Rebecca driving while intoxicated with her children in the car. Thus, we note that the reasons necessitating the most recent removal of Rebecca's children by the ACCSB have not been remedied as Rebecca continued to test positive for illegal substances.
[8] Regarding Laketta, the trial court also stated as follows: "[t]he child has expressed a concern to the Guardian Ad Litem that she wishes to and in fact needs some permanency in her life." See February 7, 2007 Judgment Entry, (re: Laketta) paragraph 15. *Page 1