OPINION
{¶ 1} Appellant ("mother") appeals the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, which terminated her parental rights with respect to her son, R.F., and granted permanent custody of R.F. to appellee, Franklin County Children Services ("FCCS").
 {¶ 2} R.F. was born on February 14, 2004, when both mother and R.F. tested positive for cocaine. Shortly thereafter, FCCS filed a complaint alleging that R.F. was *Page 2 
dependent, neglected, and abused. The trial court eventually granted temporary custody to FCCS and placed R.F. with a foster family.
 {¶ 3} FCCS filed a motion for permanent custody on February 8, 2006. FCCS ultimately withdrew that motion and asked that temporary custody be terminated. R.F. began living with mother on September 25, 2006.
 {¶ 4} On November 22, 2006, FCCS sought to modify custody, alleging that mother had tested positive for cocaine and failed to take prescription medication for her mental health illness. A magistrate again ordered temporary custody of R.F. to FCCS, with supervised visitation with mother.
 {¶ 5} On May 1, 2007, FCCS filed a second motion for permanent custody. Following a two-day trial in November 2007, the trial court granted the motion and terminated mother's parental rights.
 {¶ 6} Mother appeals and raises the following assignment of error:
 [FCCS] failed to present clear and convincing evidence satisfying its burden of proof as to the requisites for termination of parental rights pursuant to Section 2151.414 of the Revised Code.
 {¶ 7} In considering the trial court's decision to grant permanent custody to FCCS, this court must determine from the record whether the trial court had sufficient evidence before it. "`[E]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court].'" In re Brooks, Franklin App. No. 04AP-164,2004-Ohio-3887, ¶ 59, quoting Karches v. Cincinnati (1988),38 Ohio St.3d 12, 19. Further, "`if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the [juvenile] court's verdict and judgment.'" In re Brooks *Page 3 
at ¶ 59. In short, "`[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.'" In re Hogle (June 27, 2000), Franklin App. No. 99AP-944, quoting In re Awkal (1994),95 Ohio App.3d 309, 316.
 {¶ 8} It is also "well recognized that the right to raise a child is an `essential' and `basic' civil right." In re Hayes (1997),79 Ohio St.3d 46, 48, citing In re Murray (1990), 52 Ohio St.3d 155, 157. "Permanent termination of parental rights has been described as `the family law equivalent of the death penalty in a criminal case.'" In reHayes at 48, quoting In re Smith (1991), 77 Ohio App.3d 1, 16. Accordingly, parents must receive every procedural and substantive protection the law permits. Id. "Because an award of permanent custody is the most drastic disposition available under the law, it is an alternative of last resort and is only justified when it is necessary for the welfare of the children." In re Swisher, Franklin App. No. 02AP-1408, 2003-Ohio-5446, ¶ 26, citing In re Cunningham (1979),59 Ohio St.2d 100, 105.
 {¶ 9} Pursuant to R.C. 2151.414(B)(1), the court, after a hearing, may grant permanent custody of a child to FCCS if the court determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency and that one of following applies: (a) the child cannot or should not be placed with the parents within a reasonable time; (b) the child is abandoned; (c) the child is orphaned; or (d) the child has been in temporary custody of one or more public *Page 4 
or private children services agencies for 12 or more months of a consecutive 22-month period.
 {¶ 10} R.C. 2151.414(D) requires that, in determining the best interest of a child, the court must consider all relevant factors, including, but not limited to the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
 {¶ 11} FCCS has the burden to prove "best interest" by clear and convincing evidence.
 * * * Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal.
In re Estate of Haynes (1986), 25 Ohio St.3d 101, 104. *Page 5 
 {¶ 12} Here, the court determined that FCCS met its burden to show that it is in R.F.'s best interest to grant permanent custody to FCCS. In support of her argument that FCCS did not meet its burden, mother points to evidence that she had a good relationship with R.F., but argues that she had not been able to establish a bond with him because of the limits placed on her visitation. She also notes the progress she had made on the case plan, including her involvement in R.F.'s schooling and appointments, when he was returned to her in 2006. Finally, she states that R.F.'s young age at that time was a challenge for her, as it was for the foster family, but that R.F.'s behavior would change over time and would become less challenging. We conclude, however, that the trial court did not err in determining that FCCS met its burden to show that permanent custody was in R.F.'s best interest.
 {¶ 13} FCCS first sought permanent custody because of mother's drug use, which has a continuing, negative impact on R.F.'s development. Although mother was reunited with R.F. for about six weeks in 2006, the responsibilities of caring for him overwhelmed her, and she relapsed into her prior drug use. Since then, her behavior has indicated an unwillingness to avoid drug use or to understand its impact on her ability to care for R.F. While she made great progress prior to re-gaining custody in September 2006, she did not make similar progress after she lost custody the second time. At the time of trial, she had no job, no means of support other than food stamps, and no independent housing. While mother undoubtedly loves R.F. and feels a bond with him, in the four years of his life, she has been unable to demonstrate a willingness or ability to care for him long-term. *Page 6 
 {¶ 14} In contrast, R.F. is doing well with his foster family, with whom he is bonded. Although R.F. was unable to express his wishes, the lay guardian ad litem testified that, through his behavior, R.F. has indicated a desire to remain with his foster family. His life is stable with them. He attends school, and he is integrated into the household and the community. The foster family meets his needs, including those resulting from his developmental delays. The foster family is a prospective adoptive home for R.F. Under these circumstances, it was not error for the court to determine that FCCS had shown by clear and convincing evidence that permanent custody was in R.F.'s best interest.
 {¶ 15} As we noted above, R.C. 2151.414(B)(1) also requires a court to determine that one or more of the factors listed in that section applies. Here, the trial court determined that both R.C. 2151.414(B)(1)(a), which states that the child cannot or should not be placed with parents within a reasonable time, and (d), which states that the child had been in temporary custody at least 12 of the previous 22 months, apply here.
 {¶ 16} The parties agree, as the trial court found, that R.F. had been in temporary custody for at least 12 of the previous 22 months. Therefore, it is unnecessary to determine whether R.F. could be placed with mother within a reasonable time. Nevertheless, we address mother's arguments in that respect.
 {¶ 17} Mother argues that FCCS did not make a reasonable effort, as required under R.C. 2151.414(E), to reunify her with R.F., particularly given the difficult behavior R.F. was exhibiting. Mother blames FCCS for suspension of the visitation and for offering insufficient help to her. The record does not support mother's assertions. *Page 7 
 {¶ 18} With respect to the case plan, the court found that mother had not met the requirements of the plan. Specifically, mother had not attended any of R.F.'s medical appointments since November 2006. She did not complete parenting classes subsequent to November 2006, although she had enrolled in a parenting class shortly before trial. She did not remain drug-free and completed only four out of 56 drug screens. She had no employment. She had no independent housing, although she was living with her sister at the time of trial. She admitted that she had stopped taking prescription medications for her mental health issues. And she attended only four out of 35 possible visits with R.F.
 {¶ 19} As for assistance from FCCS, mother received staff support to help her with R.F. and bus passes for transportation to drug screens and visits. Visitation with mother was suspended, but only after mother failed to show up for several scheduled visits.
 {¶ 20} To be sure, mother made great progress on her case plan prior to September 2006, when R.F. was returned to her. At that time, she had a job, she had her own housing, and she was drug-free. Within a short time, however, her responsibilities as R.F.'s caretaker overwhelmed her. She admitted that, once she lost custody again in November 2006, she "just gave up." (Nov. 27, 2007 Tr. 96.) While mother testified that more progress could be made if she were given another chance, there is no evidence that giving mother more time would result in better compliance with the case plan, stable housing, stable employment or a drug-free life style. Therefore, while unnecessary, it was not error for the trial court to conclude that R.F. could not be placed with mother within a reasonable time. *Page 8 
 {¶ 21} For all these reasons, we conclude that the trial court did not err in granting permanent custody of R.F. to FCCS. Accordingly, we overrule mother's single assignment of error. We affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.
Judgment affirmed.
 PETREE and TYACK, JJ., concur. *Page 1