[Cite as *In re D.H.*, 2016-Ohio-7933.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF : | ) | |
| | ) | |
| D.H., C.E., T.E., F.E. | ) | |
| | ) | CASE NO. 16 CO 0010 |
| | ) | |
| | ) | OPINION |
| | ) | |
| | ) | |
| | ) | |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Civil Appeal from Court of Common Pleas, Juvenile Division of Columbiana County, Ohio Case Nos. J2012-0194-4, J2012-0195-4, J2012-0196-4, J2012-0197-4 |
| JUDGMENT: | Affirmed |
| APPEARANCES: For Appellee | Attorney Allyson Lehere 260 W. Lincoln Way Lisbon, Ohio 44432 |
| For Appellant | Attorney Rhonda G. Santha 6401 S.R. 534 West Farmington, Ohio 44491 |

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: November 28, 2016

DONOFRIO, P.J.

{¶1} Appellant, Angela H., appeals from a Columbiana County Juvenile Court judgment terminating her parental rights and granting permanent custody of her four children to appellee, the Columbiana County Department of Job and Family Services.

{¶2} Appellant is the biological mother of four children: D.H. (d.o.b. 9/13/07); C.E. (d.o.b. 7/25/09); T.E. (d.o.b. 6/6/11); and F.E. (d.o.b. 6/11/12). Orvin E. is the children's biological father.

{¶3} Appellee filed separate complaints on October 3, 2012, alleging D.H., C.E., and T.E. were dependent children and F.E. was a neglected child. The complaints stemmed from allegations that the parents did not demonstrate even minimal parenting skills, the home was unsafe and unsanitary, and F.E. was significantly underweight and underdeveloped. At a December 27, 2012 hearing, the trial court adjudicated the children dependent/neglected as alleged in the complaints and granted appellee temporary custody.

{¶4} A case plan was put into place that included elimination of bed bugs and cockroaches from the home, maintaining utilities, parenting classes, counseling, and visitation.

{¶5} Conditions improved and, on December 19, 2014, appellee reunified the children with the parents.

{¶6} Unfortunately, after reunification, the condition of the parents' home deteriorated again, the parents did not take the children for doctor's visits, and there was a substantial amount of fighting between the parents. On May 4, 2015, appellant contacted appellee stating that she wanted the children removed from her home because she was unable to care for them and she was a victim of domestic violence from their father. Appellee placed the children in respite care.

{¶7} On May 8, 2015, appellee advised the parents it was going to return the children to them. But appellant stated she did not want the children returned home to her at that time. Nonetheless, appellee returned the children on May 8. Appellee continued to monitor the children.

**{¶8}** On July 23, 2015, appellee once again moved for temporary custody of the children asserting the home conditions had deteriorated again and citing a re-infestation of bedbugs, violence in the home, and lack of proper medical care and proper nutrition. The court granted temporary custody to appellee.

**{¶9}** On October 29, 2015, appellee filed motions for permanent custody of the children. The motions alleged permanent custody was in the children's best interest due to issues with domestic violence, the children's school attendance, the condition of the parents' home, and the parents' failure to provide medical care.

**{¶10}** The trial court held a hearing on the permanent custody motions on March 14, 2016. The court heard testimony from the children's court-appointed special advocate, three of appellee's employees who worked with the parents and the children, and appellant. The court found that the father had abandoned the children given that he had not contacted them or visited them for approximately eight months. The court also found that appellant had only visited the children 11 times during that eight-month period despite the fact that she was offered 32 visits. The court found appellant repeatedly made excuses for her failure to comply with the case plan or to visit the children. It found she used the excuse of her illness, the father's illness, or the illness of extended family members. The court further found that appellee had made multiple referrals and offered support services to the parents to assist them with their case plan but both parents failed to demonstrate that they could adequately maintain their household or adequately supervise their children. The court went on to find that permanency and the best interests of the children could not be achieved within a reasonable time by continued reunification with either parent. Therefore, the court found it was in the children's best interest to permanently terminate the parents' parental rights and place the children in appellee's permanent custody.

**{¶11}** Appellant filed a notice of appeal on May 5, 2016. The father did not appeal. The trial court stayed its order pending this appeal. Appellant now raises a single assignment of error.

{¶12} Appellant's sole assignment of error states:

TRIAL COURT VIOLATED APPELLANT'S SIXTH AND FOURTEENTH AMENDMENTS BY PERMITTING ALL OF APPELLEE'S WITNESSES TO TESTIFY WITHOUT ANY PRESENTATION OF QUALIFICATIONS.

{¶13} Appellant argues the trial court erred in allowing appellee's witnesses to provide their opinions that permanent custody was in the best interest of the children when the witnesses did not testify as to their qualifications. She asserts the witnesses were not qualified to give their opinions on permanent custody. Appellant also alleges her counsel was ineffective for failing to object to these witnesses' testimony based on their lack of credentials. Additionally, appellant argues the court failed to consider the children's wishes in making a best interest determination.

{¶14} A parent's right to raise his or her children is an essential and basic civil right. *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), citing *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). "Permanent termination of parental rights has been described as 'the family law equivalent of the death penalty in a criminal case.' *In re Smith* (1991), 77 Ohio App.3d 1, 16, 601 N.E.2d 45, 54." *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997). However, this right is not absolute. *In re Sims*, 7th Dist. No. 02-JE-2, 2002-Ohio-3458, ¶ 23. In order to protect a child's welfare, the state may terminate parents' rights as a last resort. *Id*.

{¶15} Appellant makes two arguments in her assignment of error. First, she contends appellee's witnesses were not qualified to give opinion testimony and her counsel should have objected to their testimony on this basis. She contends her counsel was ineffective for failing to object to appellee's witnesses' testimony that permanent custody was in the children's best interests.

{¶16} R.C. 2151.352 provides that parents are guaranteed the right to counsel at all stages of a permanent custody proceeding. This right to counsel

includes the right to effective assistance of counsel. *In re Brooks*, 10th Dist. Nos. 04AP-164, 04AP-202, 04AP-165, 04AP-201, 2004-Ohio-3887, ¶ 24. In permanent custody proceedings, where parents face losing their children, we apply the same test as the test for ineffective assistance of counsel in criminal cases. *In re Heston*, 129 Ohio App.3d 825, 827, 719 N.E .2d 93 (8th Dist.1998).

**{¶17}** To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, the appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. Second, the appellant must demonstrate he or she was prejudiced by counsel's performance. *Id.* To show that he or she has been prejudiced by counsel's deficient performance, the appellant must prove that, but for counsel's errors, the result of the trial would have been different. *Bradley*, at paragraph three of the syllabus.

**{¶18}** Appellant bears the burden of proof on the issue of counsel's effectiveness. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). In Ohio, a licensed attorney is presumed competent. *Id.*

**{¶19}** Pursuant to Evid.R. 702, a witness may testify as an expert if (1) the testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons, (2) the witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony, and (3) the testimony is based on reliable scientific, technical, or other specialized information. Thus, for a witness to testify as an expert, they must be qualified as such.

**{¶20}** But a witness need not be qualified as an expert witness in order to give opinion testimony. Evid.R. 701 sets out the parameters for lay witness opinion testimony:

If the witness is not testifying as an expert, the witness' testimony in the

form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Thus, a lay witness may give opinion testimony as long the testimony is rationally based on the witness's perception and is helpful to the trier of fact in understanding the witness's testimony or determining a fact at issue.

**{¶21}** In this case, appellee presented four witnesses. Only one of those four actually testified that in her opinion permanent custody was in the best interest of the children. Moreover, none of these witnesses testified as an expert witness. Instead, each was a lay witness whose opinion was based on their perceptions and whose opinion was helpful to a determination of a fact in issue - that being whether permanent custody was in the children's best interests. We will address each of appellee's four witnesses in turn.

**{¶22}** The first witness was Theresa Cusick. Cusick testified that she was the court-appointed special advocate for the children. (Tr. 5). She stated that she has been the children's court-appointed special advocate since October 2014 (approximately one and half years). (Tr. 5-6). In her role, Cusick has had contact with all of the children. (Tr. 6). She has observed them both in their parents' home and in their foster home. (Tr. 8). Cusick offered her recommendation that it was in the children's best interest to grant permanent custody to appellee. (Tr. 6).

**{¶23}** The second witness was Amy Creaturo-Moore. Creaturo-Moore testified she is an ongoing services worker for appellee. (Tr. 13). In her capacity as an ongoing services worker, she is familiar with all four children and both parents. (Tr. 14-15). Creaturo-Moore stated she has been assigned to this case since October 2012. (Tr. 15). She stated she drafted the initial case plan and has monitored the children's and the parents' progress throughout this case. (Tr. 15-16). Creaturo-Moore testified about the history of the case and the parents' failure to complete the case plan. She did not offer an ultimate opinion as to permanent

custody but overall her testimony indicated that permanent custody to appellee would be in the children's best interest.

**{¶24}** Tonia Duncan-Lydie was the third witness. Duncan-Lydie is an adoption assessor for appellee. (Tr. 52). She also worked as an ongoing case worker for appellee. (Tr. 52-53). In her capacity as an ongoing case worker, Duncan-Lydie became familiar with the parents and children in this case. (Tr. 53-54). At the time of the hearing, she had been working with this family for approximately six months. (Tr. 54). She was familiar with the case plan and the family history. (Tr. 54). She monitored the children's progress in foster care and visited the parents' home. (Tr. 55). Duncan-Lydie testified regarding the poor condition of the parents' home, the lack of proper sleeping arrangements, the parents' poor attendance at counseling appointments, and the parents' poor attendance at visits with the children. Like Creaturo-Moore, Duncan-Lydie was not asked her opinion as to whether permanent custody to appellee was in the children's best interest, but her overall testimony suggested that permanent custody would be in their best interest.

**{¶25}** Appellee's fourth and final witness was Sherry Smith. Smith testified she is a unit support worker for appellee. (Tr. 81). As part of her job duties, Smith supervises visitations. (Tr. 81-82). She stated that through her job, she was familiar with the parents and the children in this case. (Tr. 82). She has supervised the majority of the visits between appellant and the children. (Tr. 82). She testified that out of the last 32 available visits, appellant only attended 11. (Tr. 83). Smith did not offer an opinion on permanent custody, but like the other witnesses before her, her testimony suggested permanent custody would be in the children's best interests.

**{¶26}** Notably, Cusick was the only witness who actually rendered an opinion that permanent custody was in the best interest of the children. Cusick was the children's court-appointed special advocate and had been so for approximately a year and a half.

**{¶27}** She had contact with all of the children and their parents and observed the children both in their parents' home and in their foster home. She gave her

opinion which was rationally based on her perception of the children and the parents and was helpful to the court's determination of whether or not to grant appellee's motion for permanent custody. Thus, her testimony complied with Evid.R. 701.

**{¶28}** As to appellee's other three witnesses, Creaturo-Moore, Duncan-Lydie, and Smith, each testified as to their involvement and familiarity with this case. Their testimony was focused on their observations of both the children and the parents and providing the court with a history of this case. None of these witnesses offered their opinion on whether the court should grant the permanent custody motion.

**{¶29}** Based on the above, the trial court did not err in allowing each of the above witnesses to testify. Moreover, appellant's counsel was not ineffective for failing to object to appellee's witnesses' testimony.

**{¶30}** Second, appellant contends the court failed to consider the children's wishes in determining their best interests.

**{¶31}** We review a trial court's decision terminating parental rights and responsibilities for an abuse of discretion. *Sims*, 7th Dist. No. 02-JE-2, ¶ 36. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶32}** In determining whether it is in the child's best interest to grant permanent custody to the agency, the court shall consider numerous factors including "[t]he wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child." R.C. 2151.414(D)(1)(b).

**{¶33}** At the time of the permanent custody hearing, D.H. was eight years old, C.E. was six years old, T.E. was four years old, and F.E. was three years old.

**{¶34}** Cusick was the only witness who testified regarding the children's wishes. She testified that the children are quite young but she had attempted to discuss their wishes regarding permanent custody with them. (Tr. 6). She stated that when she discussed the issue with the older two children, they remained quiet on

the subject. (Tr. 6). As to the younger two children, Cusick stated they were too young to have a discussion about permanent custody. (Tr. 7).

{¶35} The trial court found that all four of the children were "deemed to be of such young age that they are unable to adequately appreciate the meaning or consequences of the Motion for Permanent Custody before the Court or to make a reasonable expression of their desire regarding the outcome of these proceedings."

{¶36} The only evidence the trial court had regarding the children's wishes was Cusick's testimony. Cusick stated that she attempted to discuss the issue with the older two children but they were unresponsive to these attempts. Moreover, Cusick opined that the younger children were simply too young to understand the subject of permanent custody. Given Cusick's testimony, the trial court did not abuse its discretion in finding that the children were unable to make a reasonable expression of their wishes as regarding the permanent custody motion.

{¶37} Accordingly, appellant's sole assignment of error is without merit and is overruled.

{¶38} For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, J., concurs.

DeGenaro, J., concurs.